ROBINSON, Appellant,

v.

McDOUGAL et al., Appellees.

[Cite as *Robinson v. McDougal* (1988), 62 Ohio App.3d 253.]

Court of Appeals of Ohio,
Paulding County.

No. 11-87-6.

Decided Nov. 14, 1988.

*Hunt & Hunt* and *William T. Hunt,* for appellant.

*Norman E. Cook,* for appellees McDougal and Winkle.

*Donald Hummer, Jr.,* for appellee GMAC.

J. Thomas Guernsey, Judge.

In early January 1986, plaintiff, Jenni Robinson, agreed to purchase from defendant Winkle Chevrolet, Oldsmobile, Pontiac, Inc., hereafter referred to as "Winkle," a used 1985 Pontiac Fiero automobile. On Saturday, January 4, 1986, after previously having signed a credit application, she signed a retail installment sale contract and an agreement to provide accidental physical damage insurance, and made a payment to Winkle of $503.50, for which she received a receipt in that amount showing it to be for "down paymt. & tag." She then took delivery of the car. Defendant General Motors Acceptance Corporation, hereafter referred to as "GMAC," undertook to provide financing for the transaction, and defendant Harold McDougal represented Winkle as salesman for the transaction.

At the time of taking delivery, plaintiff had no policy of insurance covering physical damage to the car, had not arranged for same, and a conflict exists in evidence as to whether the installment contract and the agreement to provide accidental physical damage insurance were signed by the plaintiff in blank or whether the blanks on these documents were first filled in. In any event, her completed copy of the installment contract, showing an execution date of January 6, 1986, was mailed to her by Winkle on that date and received by her on January 7, 1986. Meanwhile, after receiving delivery of the car, plaintiff had made overtures to one or more insurers to obtain physical damage coverage for the car, but because of the amount of the premium asked did not contract for same. After then receiving and reviewing the installment contract on January 7th, plaintiff attempted on that date to return the car to

Winkle and to obtain a refund from Winkle of the money paid by her. When Winkle would not accept the car's return and refund plaintiff's money, plaintiff employed counsel who contacted a representative of GMAC and was advised that she should turn the car over to another General Motors dealer for safekeeping while the matter was being considered. This was accomplished by her in the first part of March 1986, and plaintiff made no further payments on the car, believing that the matter had been resolved. Some time later she was advised by GMAC that the car had been repossessed for nonpayment and would be sold, with plaintiff to be held liable for any deficiency remaining on her obligation to GMAC.

Her original attorney having withdrawn, plaintiff then obtained present counsel who filed on her behalf in the Court of Common Pleas of Paulding County a complaint against defendants McDougal, Winkle and GMAC, alleging that defendants "altered her credit application," "did not supply plaintiff with a filled in retail installment contract on January 4, 1986, as required by R.C. 1317.02, but had her sign said contract blank," and "on the filled out retail installment contract falsified the amount of the down payment [as being $983.00, instead of] the amount paid by the plaintiff on January 4, 1986, [$503.50]," evidenced by the receipt given her by Winkle. The complaint sought that the installment contract be "cancelled" and that she be awarded $10,000 punitive damages, $10,000 damages for emotional disturbance caused her, and that her down payment of $503.50 be returned to her. McDougal and Winkle joined issue on the complaint and Winkle counterclaimed for $483 claimed to be due to Winkle as the balance of the down payment. GMAC joined issue on the complaint and counterclaimed for the $5,129.52 deficiency on the installment contract not satisfied by the repossession and sale of the car.

During the course of the proceedings GMAC moved for summary judgment, which motion was overruled. Although plaintiff had endorsed her demand for jury trial on her complaint and jury trial had been set, on June 1, 1987, two days before trial was to be had, the trial court ordered the cause tried to the court without the intervention of a jury on its finding "that the primary relief sought by the plaintiff herein (cancellation of a retail installment contract) is equitable in nature and that the demand for money judgment is secondary to and dependent upon plaintiff's right to equitable relief and that the plaintiff is thus not entitled to trial by jury as demanded with her complaint."

After trial the court concluded that "plaintiff has failed to prove by clear and convincing evidence that she is entitled to the cancellation of the retail installment contract," and rendered judgment for defendant dismissing her complaint, against her and for defendant GMAC for the deficiency in the

amount of $5,762.88, and against her and for defendant Winkle for the balance of the down payment in the amount of $483.

It is from this judgment that this appeal was taken by plaintiff, she assigning error of the trial court (1) in not rescinding and revoking the purchase of the Fiero, (2) in not rescinding and revoking the retail installment contract for raising the price, (3) in not finding that plaintiff had proved her case by clear and convincing evidence, and (4) in denying her a jury trial on the issue of deceptive sales practice in violation of Section 5, Article I, Ohio Constitution.

■ We will consider these assignments in somewhat reverse order, considering the fourth assignment of error as to jury trial first. It is plaintiff's position that she was entitled to a jury trial because no equitable principles are involved, the central issue being the existence of deceptive sales practices prohibited by the Ohio Consumer Sales Practices Act, R.C. Chapter 1345, and the rules promulgated pursuant thereto, thus invoking the penalties prescribed by R.C. 1345.09.

■ Defendants McDougal and Winkle assert that we cannot review this assignment because the trial court entered its order denying a jury trial on June 1, 1987, and that a timely notice of appeal was never filed from such denial. However, such an order is not, in and of itself, a final appealable order and may be reviewed as a procedural incident to the final judgment thereafter rendered from which this appeal was thereafter filed, in the same manner that any other trial procedure by a trial court which affects the final judgment may be reviewed.

Resolution of this assignment of error involves not only an analysis of the pleadings but also consideration of what transpired before trial and a consideration of her assertions of error in her appeal brief.

It will be observed that although plaintiff seeks "cancellation" of the installment contract, she makes no specific allegations of fraud or mistake, as such, or of any other of the common-law grounds for rescission of a contract. Her only specific reference to a statute is to R.C. 1317.02, as it applied to her allegation of not being supplied with a filled-in contract on January 4, 1986. Although this act, if it occurred, might have constituted a violation of that statute, it did not constitute common-law fraud nor is there any provision of R.C. Chapter 1317 which, for such reason, permits a rescission of a resulting contract, and the penalty provided by R.C. 1317.99 is criminal, rather than civil, in nature.

This then leaves the plaintiff's allegations of the defendants having altered her credit application, and having falsified on the installment contract the

amount of the down payment which she made on January 4, 1986. The first of these items might or might not be an element of common-law fraud as to plaintiff, but would have only questionable application to whether the installment contract, as distinguished from the credit application, should be cancelled. In any event, plaintiff now assigns no error of the trial court in failing to rescind for this reason. The remaining ground for cancellation alleged, *i.e.*, falsifying the amount of the down payment as shown on the installment contract, though perhaps again constituting an element of common-law fraud, is not necessarily fraud as to plaintiff and, likewise, the failure of the trial court to so find is not assigned as error in plaintiff's appellate brief.

Nevertheless, in her "Trial Brief" filed on May 27, 1987, before trial, plaintiff asserts both her claim contained in the first assignment of error of non-compliance with Ohio Adm.Code 109:4–3–07, dealing with the contents of a receipt for a deposit, and her claim contained in the second assignment of error of non-compliance with Ohio Adm.Code 109:4–3–16, dealing with raising the price from the price agreed upon, as both being deceptive acts or sales practices permitting rescission of "the transaction" under the provisions of R.C. 1345.09. In his opening statement at trial, plaintiff's counsel set forth the alleged facts which she would prove in support of these deceptive acts or sales practices and asserted them as violations under the Ohio Administrative Code and the Revised Code, entitling her to rescind the contract. Evidence in support of these allegations was then offered and received without objection.

Defendants say that R.C. Chapter 1345 violations cannot be considered because not pleaded and because leave to amend the complaint to conform to the evidence was not, and has never been, sought. We are of the opinion that in the circumstances here prevailing such is not the case, for the issues were tried by implied consent of the parties.

Civ.R. 15(B) respecting amendments to conform to the evidence prescribes, among other things:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * Failure to amend as provided herein does not affect the result of the trial of these issues. * * * *"

McCormac, Ohio Civil Rules Practice (1970) 206, Section 9.14, says:

" * * * Generally the consent is implied rather than express. Usually this occurs when evidence in support of the issue has been introduced at the trial without objection from the adverse party. It has been held that it is abundantly clear that a litigant cannot for tactical purposes stand by silently while evidence is being admitted and then claim later that no relief can be

granted because the matter was not pleaded. If the defendant himself produced evidence on the matter the claim for implied consent to try the issue is much stronger. * * * "

We are fully aware of the Supreme Court's conclusion in *State, ex rel. Evans, v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159, that whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent showing of an abuse of discretion. Here, the deceptive sales practice issues were not only heard without objection but were argued in closing argument without objection and the trial court at no time, and in no manner, ruled out their trial.

■■■ We are also fully aware of *Freitag v. Bill Swad Datsun* (1981), 3 Ohio App.3d 83, 3 OBR 96, 443 N.E.2d 988, and agree with the conclusion of the Franklin County Court of Appeals that under Civ.R. 44.1, specificity is not required in giving notice that a party intends to rely on a regulation so long as the pleadings are sufficient to inform the court and litigants that the regulation is relevant to the lawsuit and that where notice is given that plaintiff intends to rely on a statute, such as R.C. 1345.02, a reading of that section will immediately place a person on notice that other portions of the Revised Code chapter of which that statute is a part and regulations promulgated under that chapter are relevant to a determination of whether the provisions of the statute have been violated. In our opinion, in the circumstances here, notice given by the trial brief filed prior to trial, referring to violations of R.C. 1345.09, equally constitutes notice of reliance on other regulations adopted under the provisions of R.C. 1345.02, such as the regulations here involved.

Accordingly, it appears that the only issues remaining that went to trial which had bearing on the rescission were not issues of common-law fraud or mistake constituting grounds for rescission of a contract in equity, but were those statutory issues of which the trial court and the parties had notice alleged to be deceptive acts or practices under regulations Ohio Adm.Code 109:4-3-07 and 109:4-3-16 adopted under R.C. 1345.05(B)(2) as substantive rules defining acts or practices that violate R.C. 1345.02. R.C. 1345.09 reads in pertinent part:

"For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

"(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, *rescind the transaction or recover his damages.*" (Emphasis added.)

In short, we conclude from the foregoing that when the case is properly analyzed as to the issues before the court and known to the court and the parties before trial commenced, there remained no issues having bearing on the plaintiff's right of equitable rescission of the installment contract, that the only issues of rescission remaining involved the right of plaintiff to, "in an individual action, *rescind the transaction* * * * *"* (emphasis added), set forth in R.C. 1345.09, which did not involve equitable issues of fraud, mutual mistake, or otherwise, triable by a court without the intervention of a jury, but solely legal issues relating to whether statutes had been violated by virtue of alleged violations of rules adopted defining the statutory violations. No "equities" were involved, but merely issues triable to a jury of whether a certain defined act occurred which constituted a violation and these issues were tried by implied consent without limitation by the trial court. It also then appears that subject to the jury's verdict on the issue of rescission, the resolution of the issues of recovery of plaintiff's partial down payment or recovery by the defendants of the balance of the down payment and the deficiency on the contract follows as a matter of law. Cf. *Ackerman v. Tri-City Geriatric & Health Care, Inc.* (1978), 55 Ohio St.2d 51, 56, 9 O.O.3d 62, 65, 378 N.E.2d 145, 148. It will be noted that under R.C. 1345.09, the consumer's rights in an individual action to rescind the transaction or recover damages are in the alternative. See also, *Freitag v. Bill Swad Datsun, supra.*

We thus conclude that the plaintiff was entitled to a jury trial on the factual issues actually before the court bearing on the issue of rescission authorized by statute rather than that reached in equity on grounds of fraud or mistake.

■ We come then to plaintiff's third assignment of error assigning error of the trial court in finding that she had not proved her case by clear and convincing evidence. In her argument of this assignment, plaintiff contends that she proved absolutely that the receipt given her for her $503.50 payment on January 4, 1986 did not comply with Ohio Adm.Code 109:4–3–07 requiring that all deposits must be evidenced by a receipt stating the description of the goods sold, the cash selling price, whether the deposit is refundable, and any additional costs. She then asserts that she proved by at least a preponderance of evidence that defendants raised the price of the car to more than had been agreed upon, and thus proved a violation of Ohio Adm.Code 109: 4–3–16. The assignment of error thus involves the issue of what is the degree of proof by which plaintiff was required to prove her case.

■ As we have heretofore determined, plaintiff was not resting her right to cancellation of the installment contract or to rescind the transaction on the grounds of common-law fraud or mistake, or other equitable grounds, but was

relying on acts prohibited by R.C. 1345.02, as defined by rules adopted under R.C. 1345.05(B)(2). It was not necessary, therefore, for her to prove malice, intent, knowledge or any other condition of the mind of the defendants, but merely to prove that the act or acts prohibited by statute and rule had occurred.

Because of the presumptions arising out of certain relationships and of validity and conclusiveness which arise from the formalities inherent in the preparation and signing of a written instrument, together with the presumption, in most cases, of the merger of prior negotiations therein, it has been deemed necessary that equitable grounds for the reformation or rescission of written instruments be proved by clear and convincing evidence. As stated in 44 Ohio Jurisprudence 3d (1983) 442, Evidence and Witnesses, Section 1031:

" * * * There is a well-recognized degree of proof required in a certain class of cases—a stricter standard, generally termed 'clear and convincing.' It has been said that this stricter degree of proof is required to establish a charge of fraud, the existence of a lost or spoliated will, an agreement to bequeath by will, a mutual mistake sufficient to justify reformation of an instrument, a claim that a deed absolute on its face is an equitable mortgage, the engrafting of a trust, and kindred questions. * * * "

There are no such considerations involved in the acts under consideration prohibited under R.C. Chapter 1345. Moreover, it will be observed that R.C. 1345.09 speaks of rescission of the *transaction* and not of rescission of a written contract of purchase. The legislature has not placed reliance on any presumptions of validity and the acts here involved, constituting deceptive acts or practices, are *malum prohibitum* and not necessarily *malum in se.* In that the acts here involved may be proved by mere proof that the act did occur, it is our opinion that the degree of required proof is by a preponderance of the evidence and not by clear and convincing evidence. The trial court erred to the prejudice of the plaintiff in requiring clear and convincing proof. However, we cannot weigh the evidence and substitute our discretion for that of the trial court in determining whether the plaintiff met this lesser burden of proof, and that determination must be left to the trial court.

■ Plaintiff's first assignment of error asserts error of the trial court "in not rescinding and revoking the purchase of the red Pontiac Fiero," and rests on the fact that the receipt given her by McGregor for Winkle for the payment she made on January 4, 1986, merely acknowledges that the $503.50 was paid for "down paymt. & tag," and did not comply with Ohio Adm.Code 109:4-3-07 prescribing, among other things:

"It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to accept a deposit unless the following conditions are met:

"* * *

"(B) All deposits accepted by a supplier must be evidenced by dated receipts stating the following information:

"(1) Description of the goods, (including model, model year, when appropriate, make, and color);

"(2) The cash selling price; * * *."

In effect, plaintiff asserts that this violation is self-evident from the face of the receipt given her on January 4th.

Obviously, this issue was raised by the evidence adduced, and the trial court committed error in not submitting this issue to jury trial to determine whether such a deceptive act or practice was proved by plaintiff by a preponderance of the evidence.

In her second assignment of error and in the transcript of proceedings plaintiff asserts and testified that defendant salesman told her that the final price or total ending price that she would have to pay for the car would be a little over $13,000; that she understood that the total ending price included interest and the credit life insurance she was required to take; and that since she signed the contract on January 4, 1986, while the blanks were not filled in and a completed contract was not furnished her except by mail on January 7, 1988, showing that the total sale of $19,778, included a down-payment of $983, a finance charge of $3,794.73, and a credit life insurance charge of $1,259.27, she would be required to pay over $19,000 and not a little over $13,000 as agreed, proving that the defendants had raised the price, and constituting a deceptive act or practice under Ohio Adm.Code 109:4–3–16(B)(17), and grounds for rescission under R.C. 1345.09.

On the other hand, the testimony of the salesman was that "the purchase price of the vehicle was, with tax and title, $13,780.00 or somewhere in that ball park," and that he thought "she [plaintiff] was financing like $12,900.00, total price, I believe, plus interest and the credit life and accident and health." He further testified that he was not present when she signed the installment sales contract, that he had left that to be accomplished by one William J. Miller, Winkle's General Manager, who then testified that the contract was completely filled in when it was signed by plaintiff on January 4, 1988, which was verified by one Vicki Ankney, Winkle's business manager, by testimony that her office was open at the time it was signed and that their normal business policy was that all documents completed on a Saturday would be

dated as of the next business day, and that though the document was printed out on a computer and not by her, to the best of her knowledge the installment sales contract together with plaintiff's agreement to provide accident insurance on the car was printed out by the computer on that date.

Plaintiff lacked evidence corroborating her testimony as to the contract blanks not being filled in when she signed it or evidence as to the representations she claimed were made by the salesman as to the total net price which she would pay under the contract. She did have one witness who accompanied her to the Winkle place of business when the documents were signed, but that witness wandered about the showroom, did not actually view the signing and identified by sight Mr. Miller as being Mr. McGregor, seemingly verifying McGregor's and Miller's testimony that the documents were signed in the presence of Miller rather than in the presence of McGregor as plaintiff claimed, thus making plaintiff's testimony all the more unclear and confusing. Plaintiff testified also that she had been employed by a bank for about four years and in exercising her duties of waiting on customers she also became familiar with business loans.

Obviously plaintiff's evidence as to "raising the price" is not clear and convincing as a matter of law, but, as we have previously determined, the question remains whether she has proved by a preponderance of the evidence an act or practice constituting a deceptive act or practice as defined by Ohio Adm.Code 109:4-3-16(B)(17), and thus a ground for rescission of the transaction under R.C. 1345.09. This, too, the trial court has not yet determined and committed prejudicial error in not submitting this issue to jury trial to determine whether such a deceptive act or practice was proved by plaintiff by a preponderance of the evidence.

For each of the four prejudicial errors herein found to have occurred, the judgment of the trial court must be reversed and the cause remanded thereto for new trial by a jury of the issues raised by the first two assignments of error, and for further proceedings on the damage issues as provided by law.

*Judgment reversed*
*and cause remanded.*

MILLER, P.J., and COLE, J., concur.

J. THOMAS GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.