LEWIS et al., Appellees,

v.

MOTORISTS INSURANCE COMPANIES, Appellant.

[Cite as *Lewis v. Motorists Ins. Cos.* (1994), 96 Ohio App.3d 575.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64978.

Decided Aug. 29, 1994.

576

*Gerald L. Steinberg,* for appellee Daniel Lewis.

*Mark R. Gottfried, Thomas Mayernik* and *Sheldon Karp,* for appellee Daniel Norris.

*Thomas G. McNally,* for appellee Augusta Williams.

*Joseph W. Pappalardo* and *Gary L. Nicholson,* for appellant Motorists Insurance Companies.

---

Patricia A. Blackmon, Judge.

This is an appeal from a decision of the Cuyahoga County Court of Common Pleas granting a declaratory judgment in favor of Daniel L. Lewis, Sr., Daniel L. Lewis, Jr., and Deborah Lewis, plaintiffs-appellees, Danny Norris, intervening plaintiff-appellee, Augusta Williams, Administrator of the Estate of Earl Wright, Jr., defendant-appellee, and against Motorists Insurance Companies, defendant-appellant. Motorists challenges the trial court's finding and assigns the following:

"I. The trial court's judgment in favor of appellees [was] based entirely on Ohio Revised Code Sections 3937.32 and 3937.33 because [*sic,* and] these sections do not apply to insured-initiated cancellations or any policy or coverage in effect less than ninety days.

"II. The trial court should have entered judgment as a matter of law in favor of appellant because the undisputed, admissible evidence before the court established that it was both the insured's and insurer's intent that coverage be cancelled effective June 30, 1987.

"III. If appellant was not entitled to judgment as a matter of law, appellant was entitled to a jury trial because the purpose of plaintiffs' complaints and defendant Williams' cross-claim was to recover money damages."

Having reviewed the record and the legal arguments presented by the parties, we find that the assignments of error are not well taken, and we affirm the decision of the trial court. The apposite facts follow.

On June 12, 1987, Wright went to William D. Short of Geckley–Short Insurance Agency ("Short"). Short accepted Wright's application for insurance with Motorists and his deposit of $150. Thereafter, Short was informed by Carol Rickerd at Motorists Insurance that Wright had to pay additional money before a policy could be issued. Short telephoned Wright and informed him that he would need to deposit additional money in order to obtain an insurance policy. Although a policy was never issued, coverage was in force upon the signing of the application.

As a result of that conversation, Wright went to Short's office on June 30, 1987 to request cancellation. With the assistance of Short, Wright executed a Policy Request Change form. On the same day, Short's secretary telephoned Rickerd and informed her that Wright wanted the policy cancelled effective immediately. His secretary also noted that Rickerd said she would force cancellation through the system and give Wright ten days' notice.

On July 2, 1987, Motorists sent a cancellation notice to Wright informing him that his policy was cancelled for nonpayment of premium effective July 18, 1987. A copy of this cancellation form was also sent to Short. Wright could not read, and upon receipt of this letter, his mother, Augusta Williams, read the letter to him. He understood it to mean that he had coverage until July 18, 1987.

On July 11, 1987, Wright, while operating his automobile, was in an accident, and died as a result. Daniel Lewis, Sr., Daniel Lewis, Jr., and Danny Norris were passengers in Wright's vehicle, and they were severely injured as a result of the accident.

On July 14, 1987, Short received notice of the accident and forwarded the information to Motorists' claims department. On July 18, 1987, Motorists cancelled Wright's policy retroactively to June 30, 1987.

Daniel, Sr., Daniel, Jr., and Deborah Lewis filed this action seeking a declaratory judgment finding that Wright was insured on July 11, 1987, and also seeking money damages for their injuries. The parties filed cross-motions for summary judgment, summary judgment was granted in favor of Motorists, and the Lewis family appealed. This court reversed the summary judgment and remanded this case for trial. The trial court bifurcated trial on the declaratory judgment issue from the money damages claim. Over the objection of Motorists, the trial court proceeded to a bench trial on the declaratory judgment issue. The trial court

issued an opinion. Its opinion concluded that no factual conflicts existed, and that its undertaking was "one of construction of the facts to the law at hand, rather than a determination of the facts as to any dispute."

After trial, the court held that Wright had automobile insurance coverage from Motorists at the time of his fatal accident on July 11, 1987. The court issued findings of fact and conclusions of law. The court's holding was based upon three distinct theories of coverage. The first conclusion was that the retroactive cancellation violated R.C. 3937.32 and 3937.33. The second conclusion was based upon the ambiguity of the cancellation date in the "Policy Change Request Form." The third conclusion was based upon the theory of equitable estoppel.

The trial court provided as follows:

"This subsequent act of the insurer [the July 2, 1987 providing future cancellation on July 18, 1987] essentially negated any alleged cancellation date of June 30, 1987 and estops defendant Motorists from denying that there was coverage on July 11, 1987. Not only did Earl Wright have a right to rely on this letter, but it was *reasonable* for him to do so." (Emphasis added.)

On the question of ambiguity, the trial court held that the "Policy Change Request Form" was ambiguous because the form had no specific notation or language that would indicate when the cancellation was to take effect. Because of the absence of specific language, and the fact that the form had a "review" box, the court found the "Effective Date" box on the form that contained the June 30, 1987 notation to be ambiguous. The trial court found no evidence to support the proposition that cancellation would occur immediately upon request. Ultimately, the trial court found that the ambiguity had to be construed in the insured's favor, because "Earl Wright had every reason to believe he would be covered until the 18th day of July, 1987."

■ In their first and second assignments of error, Motorists argues that it is entitled to judgment as a matter of law. Although the standard of review for a trial court's judgment entered after a trial normally involves an evaluation of whether there was competent and credible evidence, *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350, the trial court's judgment reflects that judgment was entered as a matter of law on undisputed facts.

"The Ohio Rule, as deduced from the decided cases, would seem to be that where the ultimate fact is undisputed, ordinarily a question of law is presented for determination by the court * * *." *Bennett v. Sinclair Refining Co.* (1944), 144 Ohio St. 139, 148–149, 29 O.O. 223, 227, 57 N.E.2d 776, 781. See, also, R.C. 2311.04 (issues of law must be tried to the court). In *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899, the Supreme Court of Ohio explained the rule as follows:

"[I]t is uncontestably the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to permit reasonable minds to reach different conclusions on that issue. Conversely, it is also the duty of a trial court to withhold an essential issue from the jury when there is not sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. In other words, *if all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party.* Naturally, if the finding on that issue disposes of the whole case, a duty arises to grant judgment upon the whole case." (Citations omitted and emphasis added.)

In this case, the trial court found that there were no material issues of fact in dispute, and concluded that Wright's insurance coverage was effective on July 11, 1987 as a matter of law. Accordingly, our standard of review is plenary. Therefore, we give no deference to the trial court's ruling on the law. The similar rule applies as to the standard of review for summary judgments. See Civ.R. 56(C). This court must determine from the undisputed facts whether reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom judgment was rendered, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

In its first assignment of error, Motorists argues that, as a matter of law, R.C. 3937.32 and 3937.33 do not apply when cancellation is at the request of the insured and within the first ninety days of the policy. Motorists further reasons that this was the sole basis for the trial court's decision. We agree.

R.C. 3937.31(C) provides as follows:

"Sections 3937.30 to 3937.39 of the Revised Code do not apply to any policy or coverage which has been in effect less than ninety days at the time notice of cancellation is mailed by the insurer, unless it is a renewal policy."

Furthermore, the Court of Appeals for Trumbull County held that the statutory requirements of notice of cancellation do not apply if the insured initiates cancellation. *Turner v. Progressive Specialty Ins. Co.* (1991), 72 Ohio App.3d 381, 385, 594 N.E.2d 986, 988.

It is clear that the trial court erred in applying the requirements of R.C. 3937.32 and 3937.33, because there is no dispute that cancellation in this case was initiated by the insured and less than ninety days from the time coverage was in effect.

Nonetheless, application of the Revised Code was not the sole basis of the trial court's decision; the trial court specifically stated that, as a matter of contract law, the cancellation form was "ambiguous." The trial court also specifically stated that the July 2, 1987 letter "negated any alleged cancellation date of June 30, 1987 and estops defendant Motorists from denying that there was coverage on July 11, 1987"; the court further noted that "Earl Wright [had] a right to rely on this letter * * *."

The use of the term "estops" and the conclusion that Wright had a right to rely can only be construed as equitable remedial action taken by the court. The concepts of estoppel and reliance have no meaning under the statutory framework of R.C. Chapter 3937, which imposes strict coverage guidelines, regardless of whether there was proof of reliance. Furthermore, the concepts of estoppel and reliance do not apply to contract construction as a matter of law; equitable estoppel is a matter of equity. While R.C. Chapter 3937 was not applicable in this case, it was not the sole reason for the trial court's decision. Thus, this assignment of error has merit, but is not dispositive in this case.

In its second assignment of error, Motorists argues that it was entitled to judgment as a matter of law under its contract for insurance. Motorists reasons that under the contract, Wright had an absolute right to cancel his insurance. We disagree.

Having determined that, as a matter of law, R.C. 3937.32 and 3937.33 are not applicable to this case, the remaining issues are the effective date of cancellation under the agreement of the parties and whether Motorists was equitably estopped from denying coverage. We first address the issue of the effective cancellation date of the insurance in the agreement.

It is well-established law that "in the absence of legislation the rights of the parties on cancellation of an insurance policy pursuant to its terms are as fixed by the contract as set forth in the policy." *Gibbons v. Kelly* (1951), 156 Ohio St. 163, 46 O.O. 26, 101 N.E.2d 497, paragraph two of the syllabus. See, also, *Canter v. Christopher* (1992), 80 Ohio App.3d 465, 467, 609 N.E.2d 609, 611. Where such a policy "contains a cancellation clause, common-law principles of offer and acceptance do not apply." *Turner*, 72 Ohio App.3d at 387, 594 N.E.2d at 990. It then stands to reason that, where no such policy provision is in effect, cancellation is governed by the principles of offer and acceptance.

In this case; there was no written policy in effect on June 30, 1987.[1] Thus, cancellation of the insurance coverage was governed by the principles of

---

1. In this case, there seemingly is a dispute as to whether an insurance policy was issued to Wright. The Lewis family contends that a policy was issued that has a cancellation provision.

offer and acceptance. Because there was no automatic cancellation clause in effect, Wright's cancellation request as the insured was merely an offer. Under the principles of offer and acceptance and the facts of this case, Motorists never provided Wright with a valid acceptance of this offer.

■■■ Short's acceptance of the June 30, 1987 request could not be construed as an acceptance of the cancellation effective immediately. Although the evidence reveals that Short had the authority to accept cancellation effective immediately, it is clear that he did not exercise such authority. Short processed the application, and mailed it to Motorists, but did not inform Wright that it would be accepted immediately. Furthermore, when Short's office telephoned the request into Motorists, it was informed that someone would force the cancellation through the system and provide Wright with ten days' notice. Consequently, there was no evidence that Short actually accepted cancellation or informed Wright that it would be accepted immediately on June 30, 1987.

■■■ In reaction to receiving a call from Short's office, Motorists mailed a July 2, 1987 letter to Wright. The letter informed Wright that cancellation for nonpayment of premium would be effective July 18, 1987. This letter could be construed as an acceptance, but for the parties' stipulation that the intent of this letter was to cancel Wright's coverage for nonpayment of premium.

Motorists, however, argues that, because it could only respond to a written request, it had to wait until it received that request in order to process it. To the extent that this theory relies on Short's acceptance of cancellation, it is flawed. Short's testimony reveals that he did not accept the cancellation; he merely forwarded the information to Motorists.

■■■ We next address whether Motorists' July 15, 1987 letter was a valid acceptance of the cancellation request. It is a fundamental rule of contract law that an offer cannot be accepted after the death of the offeror because the death of the offeror revokes the offer. *Wallace v. Townsend* (1885), 43 Ohio St. 537, 3 N.E. 601; 17 Ohio Jurisprudence 3d (1980) 455–456, Contracts, Section 23; Restatement of the Law 2d, Contracts (1982) 137, Section 48. Motorists received the request from Short's office on July 9, 1987, but did not mail a letter accepting

---

However, John Heffernan testified that a policy was created in Motorists' computer system on July 1, 1987, for the limited purposes of processing the July 2, 1987 cancellation notice, but no such policy was ever mailed to Wright. The so-called "mailbox rule" provides that a policy or acceptance of a request is effective when it is mailed. See *Casto v. State Farm Mut. Auto. Ins. Co.* (1991), 72 Ohio App.3d 410, 413–414, 594 N.E.2d 1004, 1006–1007.

While this process might otherwise raise a question of fact, it is immaterial in this case. The question in this case is was their policy language in effect on June 30, 1987. The clear answer is no. Assuming there was a policy issued on July 1, 1987, it was not effective on June 30, 1987.

Wright's terms of cancellation until July 15, 1987. That acceptance letter was mailed four days after Wright's death, and one day after Motorists was notified of his death.

Under the undisputed facts of this case, there was no valid acceptance of Wright's request for cancellation. The controlling date of cancellation was July 18, 1987 as stated in Motorists' July 2, 1987 letter.

We now turn to the issue whether Motorists was equitably estopped from retroactively cancelling Wright's coverage after he was killed in an automobile accident.[2] "Equitable estoppel prevents a party from exercising rights which he might otherwise have had against one who has in good faith relied upon the conduct of that party." *Johnson v. Franklin* (1989), 64 Ohio App.3d 205, 210, 580 N.E.2d 1142, 1145, cited with approval in *Metrohealth Med. Ctr. v. Kaiser Found. Hosp.* (July 22, 1993), Cuyahoga App. No. 64828, unreported, 1993 WL 277181. See, also, *State ex rel. Cities Serv. v. Orteca* (1980), 63 Ohio St.2d 295, 299, 17 O.O.3d 189, 191, 409 N.E.2d 1018, 1021. In *Johnson*, the court provided as follows:

"The elements of equitable estoppel are: (1) representation by the party to be estopped; (2) which representation 'communicate[s] some fact or state of affairs in a misleading way'; (3) and which induces reasonable, actual reliance by the second party; (4) who would 'suffer prejudice or pecuniary disadvantage' unless the first party is estopped 'from asserting an otherwise valid right in contradiction to his earlier representation.' *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135 [11 OBR 215, 463 N.E.2d 636]." *Johnson*, 64 Ohio App.3d at 210, 580 N.E.2d at 1145.

As to the first element, the July 2, 1987 letter from Motorists to Wright informing him that his insurance was cancelled effective July 18, 1987 is the representation to be estopped in this case.

For the second element, the letter's notice to Wright of the date of cancellation, July 18, 1989, was misleading. The letter was issued in response to an oral representation from the agent, Short, that it was Wright's desire to cancel.

---

2. Although equitable estoppel was not specifically pleaded in plaintiffs' complaint, it was tried by implied consent. "Unpleaded issues * * * were tried by implied consent, where they were not only heard at trial without objection but were also argued in closing argument without objection and trial court at no time, and in no manner ruled out their trial." *Robinson v. McDougal* (1988), 62 Ohio App.3d 253, 575 N.E.2d 469, at paragraph two of the syllabus (Civ.R. 15[B], construed). Whether an issue is tried by implied consent is to be decided by the trial court and will not be disturbed, absent showing an abuse of discretion. *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159. The underlying theory of equitable estoppel was argued without objection in opening statement and closing argument, and specifically relied upon in the court's opinion. Thus, equitable estoppel was tried by implied consent within the meaning of Civ.R. 15(B).

Nonetheless, according to Motorists' manager, John Heffernan, the policy and intention of Motorists was to disregard the July 2, 1987 letter upon receipt of the insured's written request. The letter was misleading because no one informed Wright that it was Motorists' policy to disregard the letter once his request was confirmed in writing. Notwithstanding Motorists' suggestion that the July 2, 1987 letter was to be disregarded, there is no authority that would excuse deception on the grounds that there was a flaw in its internal rules for processing cancellations.

For the third element, Wright was induced into relying upon the July 18, 1987 cancellation date in the letter. The July 2, 1987 letter was sent to Wright in response to his desire to cancel his policy, upon the grounds of nonpayment of premium; and it was the very last communication he had with Motorists, either directly or through Short as its agent. Therefore, the testimony of Wright's mother, Williams, that Wright believed he was covered until July 18, 1987 provides reasonable and actual reliance.

For the fourth element, the Estate of Earl Wright, Jr., will suffer a pecuniary disadvantage unless Motorists is estopped from denying coverage; this much is evident from the claims of the Lewis family. Furthermore, assuming without deciding that Motorists had a valid right to cancel Wright's coverage retroactively back to June 30, 1987, that right was clearly in contradiction to its earlier representation that coverage was effective until July 18, 1987.

When the undisputed facts presented in the form of stipulations and the undisputed testimony are construed most strongly in favor of Motorists, reasonable minds can come to but one conclusion; Motorists was equitably estopped from asserting that Wright's insurance coverage was cancelled effective June 30, 1987. Since equitable estoppel forecloses assertion of an otherwise valid right, see *Johnson, supra,* the issue of whether Motorists had a valid right to retroactively cancel insurance coverage after Wright died in an automobile accident is moot. Accordingly, the trial court properly held that, as a matter of law, Motorists was estopped from denying coverage to Wright on July 11, 1987.

In its third assignment of error, Motorists argues that it was, as a matter of law, entitled to a jury trial on the declaratory judgment issue. Motorists reasons that the declaratory judgment action in this case was one for the recovery of money only. This assignment of error has no merit.

Our review of this issue is plenary because it raises a pure question of law. R.C. 2721.10 provides for the trial of declaratory judgment actions as follows:

"When a [declaratory judgment action] involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of

fact are tried and determined in other civil actions in the court in which the proceeding is pending."

R.C. 2311.04 provides for the trial of issues as follows:

"Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure. * * *"

This court has held that where a declaratory judgment raises a question of fact, and the parties have made a valid jury demand, it is reversible error for the trial court to deny them a trial by jury. *Solon Chamber of Commerce v. Women's Gen. Hosp.* (1992), 81 Ohio App.3d 687, 612 N.E.2d 331. See, also, *Harleysville Mut. Ins. Co. v. Santora* (1982), 3 Ohio App.3d 257, 3 OBR 289, 444 N.E.2d 1076. There can be no dispute that "the right to a trial by jury does exist in a declaratory judgment action which is between an insurer and the insured or the injured party, and which is for the recovery of money." *Erie Ins. Group v. Fisher* (1984), 15 Ohio St.3d 380, 15 OBR 497, 474 N.E.2d 320. Accordingly, notwithstanding the fact that the trial court bifurcated the declaratory issue from the issue of damages, this action is one for the recovery of money.

Nevertheless, the issue in this appeal is whether the trial by the court was one of issues of fact or issues of law. See *Solon,* 81 Ohio App.3d at 694, 612 N.E.2d at 335. In *Solon,* there were conflicts in the testimony relating to a material fact. *Id.* at 695, 612 N.E.2d at 336. In this case, there are no conflicts in the material facts relied upon by the trial court in reaching its decision. Therefore, the trial court only tried issues of law, and properly denied the parties a jury trial.

*Judgment affirmed.*

JAMES D. SWEENEY and MATIA, JJ., concur.