**GENERAL ELECTRIC COMPANY**
Plaintiff

v.

**ADVANCE STORES COMPANY, INC. d/b/a Advance Auto Parts Defendant**

**No. 1:00 CV 2584.**

United States District Court, N.D. Ohio, Eastern Division.

Sept. 30, 2003.

David R. Mayo, Esq., Mariann E. Butch, Esq., Robert C. Psaropoulous, Esq., Be-

nesch, Friedlander, Coplan & Aronoff, Cleveland, OH, for Plaintiff.

Douglas W. Densmore, Esq., Kevin P. Oddo, Esq., Flippin Densmore Morse & Jesse, Roanoke, VA, Kimberly Y. Smith, Esq., Heidi J. Milicic, Esq., Steven J. Miller, Esq., Goodman, Weiss & Miller, Cleveland, OH, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT INSTANTER

WELLS, District Judge.

Before the Court is Plaintiff General Electric Company's ("GE") 11 March 2002 motion for leave to file amended complaint instanter. (Docket # 112). On 16 May 2002, Defendant Advance Stores Company, Inc. ("Advance Stores") filed a brief in opposition to GE's motion. (Docket # 125). GE filed its reply on 23 May 2002. (Docket # 126).

### I. Factual Background

On 23 April 1996, GE entered into a Letter of Agreement ("Agreement") with Western Auto Supply Company ("Western I"), a wholly owned subsidiary of Sears, Roebuck & Company ("Sears"). (Docket # 1, Ex 1). This Agreement provided that Western I would exclusively purchase automobile lamps from GE from 1 May 1996 through 1 May 1999 (the "Agreement Period") or until it had purchased $25,000,000 in lamps (the "Volume Commitment"), whichever comes last. (Docket # 1, Ex. 1). In addition, the Agreement specifies that, if the Volume Commitment is not reached by 1 May 1999, "Western Auto may elect, at Western Auto's sole option, to extend the Agreement Period until such time as the Volume Commitment is reached." (Docket # 1, Ex. 1). In November 1997, Western I and GE agreed to extend the Agreement Period to four years and increase the Volume Commitment to $34,000,000. (Docket # 1, Ex.1).

In November 1998, Sears sold all outstanding stock of Western I to Advance Acquisition Corporation ("Advance Acquisition"), a wholly-owned subsidiary of Advance Stores. Advance Acquisition and Western I immediately merged to form Western Auto Supply Company ("Western II"). In 1999 and 2000, Western II closed some of its retail automotive parts stores and transferred ownership of some of its other stores to Advance Stores. In October 2000, GE sued Advance Stores naming it successor in interest to Western I and alleging a breach of the Agreement.

### II. Litigation History

GE filed its original one-count complaint on 11 October 2000 seeking damages from Advance for breach of a requirements contract. (Docket # 1). Advance submitted its answer to the complaint on 15 December 2000 and filed a motion for summary judgment on 15 February 2001. (Docket # 11 and # 13). On 10 April 2001, this Court granted GE's motion, pursuant to Fed. R. Civ. Pro. 56(f), seeking additional time in which to conduct discovery and respond to Advance's motion. (Docket # 24). Specifically, GE was given ninety (90) days to conduct limited discovery regarding (1) corporate relationships, (2) shareholder interests, and (3) the nature and form of the transaction at issue. Pursuant to that Court order, this matter was referred to Magistrate Judge Patricia A. Hemann for the purpose of supervising the limited discovery. On 6 July 2001, this Court granted a joint motion to extend the period of time for completing this limited discovery until 23 August 2001.

Throughout July and August, GE and Advance engaged in discovery, resulting in disputes moderated by Magistrate Judge Hemann. On 28 September 2001, this Court affirmed a discovery order by Mag-

istrate Judge Hemann requiring Advance to produce certain documents and also granted GE an additional sixty (60) days to complete limited discovery. (Docket # 63). In response to a joint motion, this Court once again extended the time to complete limited discovery, ruling that all discovery must be completed by 31 January 2002 and that no more extensions would be granted. (Docket # 84). This protracted discovery led to yet more disputes and GE filed two motions for sanctions in October and December of 2001. (Docket # 70 and # 90). On 24 January 2002, the Magistrate Judge extended discovery until 8 February 2002 for limited purpose of completing depositions. Then, on 6 February 2002, the Magistrate Judge entered an order imposing two primary sanctions on Advance: 1) Advance cannot use two individuals as witnesses for any purpose during this litigation, including trial; and 2) Advance may not use any document not produced by 24 January 2002 for any purpose during this litigation, including trial. (Docket # 105). Subsequently, this Court sustained Advance's objections to the first sanction but affirmed the rest of the Magistrate Judge's 6 February order. (Docket # 123).

On 11 March 2002, GE sought leave to file an amended complaint. (Docket # 112). GE's amended complaint would add two additional claims against Advance based on piercing the corporate veil and equitable estoppel theories. Its amended complaint would also include Western II as a new defendant, suing it for breach of contract.

### III. *Legal Standard*

Once a responsive pleading has been served, a party may amend its pleading only by leave of court or by written consent of the adverse party. Fed. R. Civ. Pro. 15(a). However, Rule 15(a) provides that leave to amend pleadings should be "freely given when justice requires," and

"this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In deciding whether to permit an amendment, courts should consider several factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Housing Auth.,* 870 F.2d 1117, 1123 (6th Cir.1989). In assessing prejudice, courts should consider whether the amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Phelps v. McClellan,* 30 F.3d 658, 662 (6th Cir.1994). The longer the unexplained delay, the less prejudice the adverse party will be required to show to defeat the motion. *Phelps,* 30 F.3d at 662 (6th Cir.1994) (quoting *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 47 (2d Cir.1983)). Moreover, a motion to amend a complaint is properly denied if it fails to state a cause of action and is therefore futile. *Matthews v. Jones,* 35 F.3d 1046, 1050 (6th Cir.1994).

### IV. *Analysis*

GE seeks to amend its complaint in three primary ways:

1) Add piercing the corporate veil as a new theory of liability against Advance Stores. (Pl. Am. Compl., Count II).

2) Add a new theory of liability alleging that Advance is equitably estopped from asserting that it is not bound by the

Agreement. (Pl. Am. Compl., Count IV).

3) Add Western II as a defendant and seek damages from it for breach of contract. (Pl. Am. Compl., Count III).

GE argues that leave to amend is timely and should be granted because facts revealed during discovery demonstrated the existence of additional claims against Advance Stores and Western II. Moreover, it contends that justice dictates leave to amend should be granted because neither Advance Stores nor Western II will be prejudiced or harmed by the amendment and the filing of the amended complaint will not cause any delay to the resolution of this action. In opposition, Advance Stores asserts that GE's motion to amend should be denied both because its new claims each fail to state a cause of action and because GE failed to provide any explanation for its undue delay.[1] This Court will consider each amended claim in turn.

## A. Proposed Amended Complaint Count II: Piercing the Corporate Veil Claim Against Advance Stores

■ In Count II of its proposed amended complaint, GE alleges that Advance Stores is the alter ego of Western II and has wrongfully refused to perform the requirements of the Agreement to purchase $34,000,000 worth of automotive lamps from GE. Advance Stores responds that this claim fails as a matter of law because GE does not allege that Advance Stores acted fraudulently. While Advance Stores and GE disagree as to whether Ohio or Delaware law should be applied to this claim, this Court need not decide that question at this point. Even if Delaware law applies, as argued by Advance Stores, GE would still state a claim upon which relief can be granted. Under Delaware law, courts can pierce the corporate veil of an entity "where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner." *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del.Ch.1992); *Precision, Inc. v. Kenco/Williams, Inc.*, 66 Fed.Appx. 1 (6th Cir. 2003). Since fraud is not an absolute prerequisite for piercing the corporate veil, the failure of GE to plead fraud does not undermine the legal sufficiency of its claim.[2]

Advance also argues that GE should be denied leave to amend due to undue delay. It contends that GE's failure to raise this claim earlier is unjustified as it is based on no new information. On the contrary, GE has adequately documented the new information it obtained during the course of discovery which provided support for this new theory of liability. It was only through discovery that GE learned the details of the corporate relationships among Western I, Advance Acquisition,

---

**1.** Advance Stores also argues that it is entitled to summary judgment on each of GE's proposed amended claims. However, such arguments are premature at this point. In considering whether a proposed amended claim would be futile, the Court is only determining whether or not it fails to state a cause of action as a matter of law. In making that determination, the Court views all of the allegations in the complaint to be true and construes the complaint liberally in favor of the amending party. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). A plaintiff fails to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Id.*

**2.** Even the cases cited by Advance Stores do not support its position. *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 271 n. 15 (D.Del.1989), provides that "fraud or injustice" is required for a court to pierce the corporate veil. Moreover, Advance Stores misrepresents *Pauley Petroleum, Inc. v. Cont'l Oil Co.* by citing it out of context. *Pauley* explicitly discusses other grounds, in addition to fraud, that may justify piercing the corporate veil. 231 A.2d 450, 452–53 (Del.Ch. 1967).

Western II, and Advance Stores. GE received new information about these relationships through documents (particularly the Integration Notebook maintained by Garnett Smith and corporate minutes) and from deposition testimony. While it is true that GE raised this claim one and a half years after filing its original complaint, much of that delay is a direct result of Advance Stores' own conduct. In her 23 August 2001 order, the Magistrate Judge demonstrated both the relevance of GE's discovery requests and the recalcitrance of Advance Stores in responding to them:

> Given GE's assertion at the August 7 hearing that it is seeking evidence that Western Auto was not, in fact, independent of Advance, defendant's failure to disclose this information appears on its face to be a willful attempt to hide useful information from GE.

> This refusal by Advance to abide by the court's instructions is the latest in a series of barriers in the path of discovery erected by defendant.... In attempting to explain these and other failures to produce requested information, defendant has persistently cited its own judgment as to what information is relevant to GE's case. Just as persistently, defendant's judgment has been shown to be faulty, as much of the withheld material has clearly been relevant under fairly obvious theories that Western Auto is not an entity completely independent of Advance. Whether those theories have any validity cannot now be known, but that such theories might be raised by GE should be anticipated by any conscientious attorney.

(Docket # 46, at 2–3).

GE's piercing the corporate veil theory of liability succeeds in stating a claim upon which relief can be granted, was raised in a timely manner under the circumstances, and does not cause any prejudice to Advance Stores as it will not significantly delay the resolution of this litigation. Therefore, justice requires that GE be given leave to plead Count II of its amended complaint.

**B.  Proposed Amended Complaint Count IV: Equitable Estoppel Claim Against Advance Stores**

■ In Count IV of its proposed amended complaint, GE argues that Advance Stores should be equitably estopped from denying any responsibility under the Agreement because its conduct wrongfully encouraged GE's detrimental reliance on the Agreement. Advance argues that GE fails to state a cause of action because Ohio law does not recognize such a claim. GE is correct in pointing out that Ohio law recognizes equitable estoppel. *See e.g. First Federal Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.,* 11 Ohio App.3d 135, 145, 463 N.E.2d 636 (1983); *Doe v. Blue Cross/Blue Shield of Ohio,* 79 Ohio App.3d 369, 379, 607 N.E.2d 492. A prima facie case for equitable estoppel requires a plaintiff to prove the following four elements: 1) a factual misrepresentation by defendant, 2) which is misleading, 3) which induces actual reliance that is reasonable and in good faith, and 4) which causes detriment to the relying party. *Doe,* 79 Ohio App.3d at 379, 607 N.E.2d 492. Equitable estoppel operates to preclude "a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good-faith reliance upon that conduct." *Helman v. EPL Prolong, Inc.,* 139 Ohio App.3d 231, 245–46, 743 N.E.2d 484 (2000). Its basic purpose is "to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz,* 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990). As such, the doctrine is applied flexibly depending on the circum-

stances of a particular case. *First Federal,* 11 Ohio App.3d at 144, 463 N.E.2d 636.

Advance Stores is also correct in noting that some Ohio cases emphasize that equitable estoppel, as it is usually described, does not by itself furnish a claim for damages, but rather operates as a defense against the claim of the stopped party. *First Federal,* 11 Ohio App.3d at 144, 463 N.E.2d 636 (noting that it operates as a shield and not a sword). However, equitable estoppel, under Ohio law, has not been confined to such a narrow application. Ohio courts have repeatedly concluded that equitable estoppel may preclude the application of a statute of limitation defense. *See e.g. Helman v. EPL Prolong, Inc.,* 139 Ohio App.3d 231, 245–46, 743 N.E.2d 484 (Ohio App.2000). Moreover, plaintiffs may use equitable estoppel to prevent defendants from exercising rights which they might otherwise have had but for their conduct. *Lewis v. Motorists Ins. Companies,* 96 Ohio App.3d 575, 584, 645 N.E.2d 784 (1994); *Doe,* 79 Ohio App.3d at 379–83, 607 N.E.2d 492; *Johnson v. Franklin,* 64 Ohio App.3d 205, 210–11, 580 N.E.2d 1142 (Ohio App.1989). In *Lewis,* the Ohio Court of Appeals upheld a trial court's finding of insurance coverage on the basis of an equitable estoppel theory. 96 Ohio App.3d at 586, 645 N.E.2d 784. In that case, the court found that the insured detrimentally relied on his insurer's misleading representation regarding the cancellation date of his insurance policy. *Id.* at 585–86, 645 N.E.2d 784. While assuming that the insurance company had a valid right to retroactively cancel the policy prior to the accident at issue in the case, the court nevertheless held that the insurance company was estopped from asserting that right and therefore could not deny coverage to the insured. *Id.* at 586, 645 N.E.2d 784. *Lewis* demonstrates that equitable estoppel is indeed a valid cause of action in Ohio.

As in *Lewis,* GE's equitable estoppel claim is based on preventing Advance Stores, because of its misleading misrepresentations, from exerting an otherwise valid right. In its amended complaint, GE alleges each of the requisite elements of equitable estoppel. It claims that it relied on Advance Stores' representations that "it would honor the purchase commitments contained in the Letter Agreement when GE continued to provide product to Advance under the same terms as provided for in the Letter Agreement." (Pl. Am. Compl. at ¶ 74). Moreover, it alleges that these representations were misleading because Advance Stores did not intend to honor the terms of the Letter Agreement and in fact structured its assets to specifically avoid such obligations. (Pl. Am. Compl. at ¶¶ 70–73). Finally, GE alleges that its reliance on Advance Stores misleading representations caused it harm because it allowed Advance Stores to take advantage of the terms and conditions of the Letter Agreement, it prevented GE from negotiating a new agreement with Advance Stores, and it delayed GE's assertion of its rights against Western II. (Pl. Am. Compl. at ¶¶ 75, 76, and 78). In short, GE is arguing that it detrimentally relied on Advance Store's misleading representations that it would honor the Agreement and that therefore Advance Stores should be estopped "from asserting an otherwise valid right in contradiction to [its] earlier representation." *First Federal,* 11 Ohio App.3d at 145, 463 N.E.2d 636. Specifically, GE's equitable estoppel claim seeks to prevent Advance Stores from now claiming it is not bound by the Agreement in contradiction to its earlier representations to the contrary. While it is unclear whether Advance Stores engaged in conduct justifying the application of equitable estoppel or whether its misleading representations, if any, actually harmed GE, GE

has sufficiently alleged each element of equitable estoppel as required by Ohio law.

Advance Stores argues that GE's proposed amended complaint should fail as a matter of law because GE has failed to demonstrate detrimental reliance. For example, it contends that GE provides no evidence of how the delay in asserting its rights against Western II damaged it or how it was harmed by Advance Stores purporting to act under the terms of the Agreement. Once again, Advance Stores is applying the wrong legal standard in assessing whether GE's proposed amended claims are futile. GE need not demonstrate detrimental reliance or produce evidence to that effect; rather it need only allege facts sufficient to support a claim upon which relief can be granted. GE has met its notice pleading burden and therefore its proposed amended claim is not futile. Therefore, Count IV of GE's proposed amended complaint properly states a claim upon which relief can be granted.

Unlike Count II, GE had access to the evidence supporting its equitable estoppel claim at the time it filed its original complaint. However, GE's failure to assert this claim in its original complaint does not by itself justify denying its motion to amend absent evidence that the delay was intended to harass or "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah,* 790 F.2d 557, 561. GE's equitable estoppel claim is not so different a cause of action as to prejudice Advance Stores or delay this litigation. Advance Stores does not attempt to argue that it will be prejudiced by GE's amended complaint, and so, GE should be "afforded an opportunity to test [its] claim on the merits." *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. 227. Moreover, the one and a half year delay is not undue given the exacerbated discovery history of this case. Under these circumstances, justice requires that GE be given leave to plead Count IV of its amended complaint.

## C. Proposed Amended Complaint Count III: Breach of Contract Claim Against Western II

■ In Count III of its proposed amended complaint, GE seeks to add Western II to this lawsuit on the basis of its allegation that Western II breached its obligations pursuant to the express terms of the Agreement. This cause of action is logically and factually incoherent and therefore fails to state a claim upon which relief can be granted. GE alleges that Western II is a successor to the Agreement and therefore has a duty to perform under its terms. (Pl. Am. Compl. at ¶ 62). It then states that, according to the contract, Western II is obligated to refund certain funds to GE if it does not elect to an extension of the Agreement. (Pl. Am. Compl. at ¶ 63). However, it does not allege that Western II has not elected to such an extension. In fact, GE simultaneously alleges that Western II continues to operate under the Agreement. (Pl. Am. Compl. at ¶ 32). Since GE has failed to sufficiently allege that Western II actually breached the Agreement it has not stated claim upon which relief can be granted.

In addition, even if GE did properly state a claim against Western II, such an amended claim would be improper at this point in the litigation. Specifically, the addition of a new party to the lawsuit would prejudice Advance Stores insofar as it may be expected to further delay what has already become a protracted lawsuit. While Western II is the wholly owned subsidiary of Advance Stores and thus not unrelated to the existing litigation, its inclusion could introduce new issues or counterclaims in addition to those already being litigated. Therefore, GE's motion for leave to amend its complaint with respect to Count III is denied.

## V. Conclusion

Accordingly, GE's motion for leave to file amended complaint instanter is granted in part and denied in part. GE may amend its complaint to include Count I, the breach of contract claim alleged in its original complaint, as well as proposed amended Counts II and IV which add piercing the corporate veil and equitable estoppel as new causes of action. GE's motion is denied with regard to its proposed amended Count III, which attempts to raise a breach of contract claim against Western II.

IT IS SO ORDERED.