DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Maxine L. Smith, individually and in her capacity as trustee of the Maxine L. Smith revocable trust, and Alan Smith appeal from the judgment of the Lorain County Court of Common Pleas. We affirm.
 I.
On December 15, 1998, Larry Standen, Appellee, filed a complaint in the trial court in which he alleged that the Appellants, Ms. and Mr. Smith, interfered with and breached a contract with him. In the complaint, Appellee stated that, on September 17, 1998, he had entered into a written agreement with Ms. Smith to conduct a public auction of the inventory and contents of Appellants' store on October 17 and 18, 1998. He explained that he promoted and prepared for the auction by, inter alia, placing advertisements in newspapers, passing out flyers, securing insurance on the store property, hiring employees, purchasing food and beverages, and delivering portable toilets to the auction site. Appellee stated that, on October 12, 1998, Mr. Smith, Ms. Smith's son, left a message on his answering machine canceling the auction. Thereafter, when Appellee went to the store to prepare for the auction, Ms. Smith denied him access to the property. In his complaint, Appellee requested specific performance and injunctive relief. The court granted the injunctive relief on February 3, 1999, ordering that Appellants restrain from selling or otherwise disposing of the contents of Appellants' store. Appellee filed an amended complaint on July 23, 1999, in which he added as a defendant Ms. Smith in her capacity as a trustee.
On December 15, 1999, Appellants filed a motion for summary judgment. In affidavits filed on July 15 and December 15, 1999, Mr. Smith stated that he and his brother, Jack Smith, are the sole owners of Appellants' store. He also stated that he recalled a phone conversation with Appellee in September of 1998 during which the two parties discussed the possibility of an auction. He stated that he invited Appellee to meet with his mother and himself so that Appellee could look over the inventory of the store and ask Ms. Smith or himself specific questions regarding the potential auction. A couple of days after the visit occurred, Mr. Smith informed Appellee that Appellee could hold the auction to sell the contents of the store.
Mr. Smith stated that, without his knowledge, on September 17, 1998, Appellee went to the residence of Ms. Smith with a prepared contract that covered the specific details of the auction. Mr. Smith acknowledged that Ms. Smith signed the contract. Mr. Smith stated that he learned of the signed contract a couple of days after his mother signed it, but that he did nothing until October 12, 1998. At that point, five days before the auction, Mr. Smith explained that he lost confidence in Appellee and left a message on Appellee's answering machine in which he cancelled the contract.
In the motion for summary judgment, Appellants asserted that Appellee did not have a cause of action against them because Ms. Smith had no ownership rights in Appellants' store. Therefore, Appellants asserted that, as the Smith sons owned the property, Ms. Smith did not have the ability to form the auction contract. In a brief in opposition to the motion for summary judgment, Appellee attached an affidavit. In such affidavit, Appellee stated that Mr. Smith represented to Appellee that Ms. Smith was the owner of the property and that, when Ms. Smith signed the contract, he believed that she had the authority to do so. On June 19, 2000, the trial court denied the motion for summary judgment, holding that there were genuine issues of material fact as to whether Ms. Smith had either the actual or apparent authority to enter into the auction contract.
On April 26, 2001, an arbitration hearing was held. The arbitrators found in favor of Appellee based upon the breach of contract claim. Appellants appealed the arbitration, and a jury trial was held on June 18 and 19, 2001. On June 19, 2001, a verdict was returned in favor of Appellee. This appeal followed.
 II.
Appellants assert twelve assignments of error. We will discuss each in due course.
 A. First Assignment of Error The Trial Court Committed Reversible Error by Granting a Remedy in Money Damages Despite the Fact That There Was No Remedy at Law Available.
 Sixth Assignment of Error The Trial Court Committed Reversible Error by Granting Plaintiff Money Damages for Breach of Contract after Plaintiff Had Elected Approximately Two and One-half Years Earlier to Seek an Inconsistent and Mutually Exclusive Remedy of Specific Performance of the Contract and an Injunction Prohibiting Sale of Defendant's Property Which Caused Defendants to Suffer Great Harm.
In their first assignment of error, Appellants argue that Appellee stated in the complaint and the brief in opposition to the motion for summary judgment that specific performance was appropriate because there was no adequate remedy at law. Accordingly, Appellants assert that, Appellee has admitted that specific performance was the sole remedy, and, therefore, Appellee could not later recover monetary damages. In their sixth assignment of error, Appellants argue that it was error for the trial court to award Appellee money damages when Appellee had sought specific performance. Appellants assert that Appellee only sought specific performance and was granted an injunction by the court, and, therefore, it would now be inconsistent to allow a remedy of monetary damages. As these two assignment of error are similar, we will discuss them together to facilitate review. Both assignments of error lack merit.
Issues litigated at trial must be set up in the pleadings filed by the parties, as it is the pleadings which put an adverse party on notice of potential legal liability. Brown v. Learman (Nov. 3, 2000), Miami App. No. 00 CA 30, unreported, 2000 Ohio App. LEXIS 5071, at *3-4. However, a party cannot `"stand by silently while evidence is being admitted and then claim later that no relief can be granted because the matter was not pleaded.'" (citations omitted.) Robinson v. McDougal (1988),62 Ohio App.3d 253, 259-60. The claim for implied consent is even stronger should the objecting party introduce evidence on the matter at trial. Id. at 260. Moreover, "[m]otions to amend the pleadings to conform to the evidence presented may be made by any party at any time, but failure to amend does not affect the result of the trial of these issues." Brown, supra, at *4, citing Civ.R. 15(B).
Under Civ.R. 15(B),
 [w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.
In the instant case, the Appellants' argument hinges upon an evaluation of the trial court record to determine whether Appellee's pleadings were amended at trial or whether there was implied consent to adjudicate the issue of monetary damages. In accordance with App.R. 9(B), it is the duty of the party appealing to ensure that the record, or whatever portions thereof are necessary for the determination of an appeal, are filed with the court in which he seeks review. Rose Chevrolet, Inc. v. Adams
(1988), 36 Ohio St.3d 17, 19; see, also, Loc.R. 5(A). In the absence of those portions of the record necessary for the resolution of assigned errors, "the reviewing court has nothing to pass upon and * * * has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
While Appellee initially stated in his pleading that specific performance was appropriate as there was no adequate remedy at law, leave of court is freely given to amend pleadings. Civ.R. 15(A). The fact that Appellee requested only specific performance does not prevent him from amending his complaint at a later time to include a plea for monetary damages. Appellants have failed to include in the appellate record the trial transcript. Consequently, we cannot determine if the pleading was amended as such or whether Appellants impliedly consented to the monetary damages being litigated. Accordingly, we must presume validity of the lower court proceedings. Appellants' first and sixth assignments of error are overruled.
 B. Second Assignment of Error The Trial Court Committed Reversible Error in Finding Defendant Maxine Smith Committed a Breach of Contract Because It Was Impossible for Maxine Smith to Perform the Contract.
 Third Assignment of Error The Trial Court Committed Reversible Error by Enforcing a Contract Which Did Not Conform to State Law Regulating Sale of Partnership Property, Specifically Revised Code § 1775.24(B)(2) Which Prohibits the Assignment of Partnership Property Except in Connection with the Assignment of Rights of All the Partners in the Same Property.
 Fourth Assignment of Error The Trial Court Committed Reversible Error by Enforcing an Auction Contract Which Did Not Conform to State Law, Specifically Revised Code § 4707.20(a) Which Requires an Auctioneer to Have a Written Contract with the Owner or Consignee of Property to Be Sold at Auction.
In the second assignment of error, Appellants assert that that trial court erred in finding breach of contract as performance of the contract was impossible because Ms. Smith did not have the ability to contract for an auction as she was not the owner of the store contents. In the third assignment of error, Appellants assert that the trial court erred in finding a breach of contract when the contract did not conform to R.C.1775.24(B)(2). This statute, Appellants argue, required Mr. Smith and his brother, Jack Smith, to both agree to the auction contract. Appellants argue that there is no evidence that Appellants had the ability to contract for an auction because there is no evidence that Jack Smith agreed to the auction. In the fourth assignment of error, Appellants assert that the trial court erred in finding a breach of contract when the contract did not conform to R.C. 4707.20(A). This statute, Appellants contend, required Appellee to have a written agreement with the owner of the property to be sold. Appellants argue that, as Ms. Smith was not the owner of the property, Ms. Smith did not have the ability to form a written agreement with Appellee. As the second, third, and fourth assignments of error each address a similar issue, we will consider them together to facilitate review. We disagree as to each of these assignments of error.
The authority for one party to bind another can arise in several ways. The Ohio Supreme Court has held that:
 Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.
Miller v. Wick Bldg. Co. (1950), 154 Ohio St. 93, paragraph two of the syllabus. Additionally, the Ohio Supreme Court in General Cartage Storage Co. v. Cox (1906), 74 Ohio St. 284, 294, stated that,
 "[W]here a principal has by his voluntary act placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform on behalf of his principal a particular act, such particular act having been performed the principal is estopped as against such innocent third person from denying the agent's authority to perform it."
(citation omitted.)
The Appellants' assignments of error depend upon a review of the trial court record. Even were we to assume that the statutes cited by Appellants were applicable to this case, we cannot determine whether Ms. Smith had the authority to form a written agreement with Appellee or whether Mr. Smith had the authority to arrange an auction to sell the contents of the store without a transcript of proceedings from the trial court. Similarly, without a transcript of proceedings, we cannot resolve whether Ms. Smith had the authority to contract for an auction. As stated above, it is the appealing party's duty to ensure that the necessary portions of the record for the determination of the appeal are filed with the reviewing court. Rose Chevrolet, Inc., 36 Ohio St.3d at 19; see, also, Loc.R. 5(A). Without the record necessary to resolve the assigned errors, a reviewing court must presume the validity of the lower court's proceedings and affirm the decision. Knapp, 61 Ohio St.2d at 199. Accordingly, Appellants' second, third, and fourth assignments of error are overruled.
 C. Fifth Assignment of Error The Trial Court Committed Reversible Error by Enforcing a Contract Which Was a Contract for Personal Services.
In the fifth assignment of error, Appellants assert that the trial court erred because it enforced a contract for personal services. We disagree.
The general rule is that a personal services contract cannot be enforced through specific performance. Masetta v. Natl. Bronze AluminumFoundry Co. (1953), 159 Ohio St. 306, 311. "This rule is based upon the fact that the mischief likely to result from an enforced continuance of the relationship after it has become personally obnoxious to one of the parties is so great that the interests of society require the remedy be denied." Doe v. Adkins (1996), 110 Ohio App.3d 427, 437. Furthermore, a personal services contract will not be specifically enforced when there is an adequate remedy at law, i.e., damages. Id.
Assuming, without deciding, that the contract at issue was in fact a personal services contract, Appellants' assignment of error still fails because the trial court did not order the specific performance of the contract. Appellants' fifth assignment of error is overruled.
 D. Seventh Assignment of Error The Trial Court Committed Reversible Error by Denying Defendants' Motion for Summary Judgment Based upon the Argument That Defendant Maxine Smith Did Not Own the Property That Plaintiff Claimed He Had Contracted with Defendant Maxine Smith to Sell by Auction.
 Eighth Assignment of Error The Trial Court Committed Reversible Error by Denying Defendants' Motion for Summary Judgment Based upon the Argument That Plaintiff's Contract Could Not Assign the Ownership Rights of Partnership Property That Plaintiff Sought to Auction since the Assignment of Such Rights Would Violate Revised Code § 1775.24(b)(2).
 Ninth Assignment of Error The Trial Court Committed Reversible Error by Denying Defendants' Motion for Summary Judgment on the Grounds That Plaintiff's Complaint Sought Specific Performance of a Personal Service Contract.
In the seventh, eighth, and ninth assignments of error, Appellants assert that the trial court erred in denying their motion for summary judgment on several grounds. To facilitate review, we will consider these assignments of error together. Each assignment of error lacks merit.
Any error made by a trial court in denying a motion for summary judgment "is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." Continental Ins. Co. v. Whittington (1994),71 Ohio St.3d 150, 156. In Continental, the Ohio Supreme Court held that the question of whether the trial court erred in denying a motion for summary judgment becomes irrelevant following a trial on the merits and that any error is corrected when the jury determines the issues at trial in favor of the party opposing summary judgment. Id. at 157-58.
In the instant matter, the case proceeded to trial, and the jury found in favor of Appellee. Consequently, any error claimed by Appellants is rendered either moot or harmless. Appellants' seventh, eighth, and ninth assignments of error are overruled.
 E. Tenth Assignment of Error The Trial Court Committed Reversible Error by Granting Plaintiff Damages Even Though [sic.] the Contract Was Not Mutually Enforceable.
In the tenth assignment of error, Appellants assert that the trial court erred in granting Appellee monetary damages. Specifically, Appellants argue that, as specific performance was the sole remedy available to the court, no remedy was possible because specific performance of a contract for personal services must be denied when there is no mutuality of remedy.
Initially, we note that the trial court did not enforce the specific performance of the contract; rather, the court awarded monetary damages. Additionally, as previously discussed, although Appellee initially pled for specific performance and claimed that there was no adequate remedy at law, he was not prevented from amending his plea to also include monetary damages, as leave of court to amend pleadings is to be freely given. Civ.R. 15(A). As discussed supra, without the transcript of proceedings, this court cannot determine whether, during trial, the complaint was amended or whether implied consent was given to address the issue. Therefore, we presume the validity of the trial court's judgment. SeeKnapp, 61 Ohio St.2d at 199. Accordingly, Appellants' tenth assignment of error is overruled.
 F. Eleventh Assignment of Error The Trial Court Committed Reversible Error in Finding There Had Been a Breach of Plaintiff's Contract.
In the eleventh assignment of error, Appellants argue that the auction contract contains an escape clause. Appellants assert that they used the escape clause, and, therefore, the contract was no longer in force and could not be breached. We disagree.
An appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention. Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210. Based upon the record before this court, it appears that Appellants did not raise this issue before the trial court. Accordingly, this argument is waived on appeal. Appellants' eleventh assignment of error is overruled.
 G. Twelfth Assignment of Error The Trial Court Committed Reversible Error by Enforcing a Contract So Vague and Error Ridden as to Make it Unenforceable.
In the twelfth assignment of error, Appellants assert that the trial court erred in enforcing the contract. Specifically, Appellants argue that the contract was too vague to enforce as the only description of the property in the contract is "Gift Shop County Store[.]" We disagree.
A contract is enforceable if it contains all the essential elements of the bargain. Mr. Mark Corp. v. Rush, Inc. (1983), 11 Ohio App.3d 167,169. Omissions of less central subjects may be left to a later agreement or a judicial resolution, according to accepted legal principles. Id. The Ohio Supreme Court, in Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, held:
 If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241 * * *. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term. Hallet Davis Piano Co. v. Starr Piano Co. (1911), 85 Ohio St. 196.
Furthermore, the courts can "determine the meaning of ambiguous terms according to "the parties' mutual understanding, the custom and practice in the trade or community, or other established legal principles." Mr.Mark Corp., 11 Ohio App.3d at 169. Additionally, as to the determination of ambiguous terms' meaning, the Ohio Supreme Court held, in Masters v.Freeman (1867), 17 Ohio St. 323, paragraph three of the syllabus:
 Written contracts may always be read in the light of surrounding circumstances. The intention of the parties to a contract so unskillfully drawn as to be obscure or doubtful, may be rendered reasonably certain by proof of extrinsic facts. Where the record does not disclose all the evidence of this character offered in the court below, a construction given to such instrument which is not clearly inconsistent with its terms, will not be held erroneous by a reviewing court.
In the case at bar, despite the fact that the contract does not list the individual items to be sold, the contract contains all the essential elements of the bargain. Significantly, Appellants do not assert that the essential elements to form a contract were lacking; rather, Appellants contend that the contract as written is too vague for the court to enforce. Appellants' argument is dependant upon an evaluation of the trial court record to determine whether extrinsic facts or other established legal principles provided additional meaning to the terms of the contract. As Appellants have failed to include in the appellate record the trial transcript, we cannot determine whether the contract was too vague to enforce. Therefore, we presume the validity of the trial court's judgment. See Knapp, 61 Ohio St.2d at 199. Appellants' twelfth assignment of error is overruled.
 III.
Appellants' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
BAIRD, J., CARR, J. CONCUR.