Burke, J.
Two insurance carriers, plaintiff-appellant Cosmopolitan Mutual Insurance Company and defendant-respondent Lumbermen’s Mutual Casualty Company, seek a declaratory judgment as to their respective liability arising out of a suit brought by a third party against the insured. Upon a settlement in favor of the injured third party, in the amount of $70,000, each of the two carriers and the City of New York contributed one third. Neither Cosmopolitan nor Lumbermen’s admitted liability under their respective policies, and instead stipulated that the outcome of the present action for declaratory judgment would determine which — or in what amount each — company was liable.
On June 1, 1958, 1770 First Avenue Corporation sold Riva Service Corporation its automobile garage business and gave it a 20-year lease of the realty. On June 19, Sharon Higgins was injured in a fall on the sidewalk in front of the premises. 1770 was insured by Cosmopolitan in the amount of $50,000-$100,000 under a policy covering it for the year ending November 15, 1958. Unaware of the Cosmopolitan policy, Riva obtained from Lumbermen’s a 30-day binder for various types of appropriate coverage commencing May 28,1958, within the limits of $100,000-$300,000. In so doing, it acted through its insurance broker, Buhler Service Corporation, which had a broad, general authority to handle Biva’s insurance matters, including freedom to *151 select carriers. Buhler, on Biva’s behalf, notified Lumbermen’s of the June 19 accident on June 24. Lumbermen’s thereafter advised Buhler that the risk was unacceptable but extended the 30-day binder to July 13 to enable Biva to obtain other coverage for the future — which it did.
Some time later in July, an agent of Cosmopolitan, which was anxious for Riva’s business, informed Buhler about 1770’s policy and advised that Cosmopolitan would “write for the new owners of the business ” if the necessary permission from 1770 could be obtained. Buhler, accordingly, had Riva obtain permission and wrote Cosmopolitan to change the name of the insured from 1770 to Biva, at the same time “ requesting audit to 6/1/1958 date of change of ownership ”. Cosmopolitan complied, making the coverage retroactive to June 1.
Once Riva was covered by Cosmopolitan, Buhler — acting under its general authority from Biva and also after consultation with Riva’s president — “ cancelled flat ” the Lumbermen’s binder. This means — at least in the ease of a nonmatured risk — that the binder is cancelled from its inception without any premiums being collected. It is from this cancellation that the controversy between Cosmopolitan and Lumbermen’s springs.
In November, 1958 Riva received a claim letter from Miss Higgins’ attorney and forwarded it to Buhler which in turn forwarded it to Cosmopolitan. Cosmopolitan was thus made aware of the June 19, 1958 accident in November of that year. In February, 1961 Cosmopolitan learned of the Lumbermen’s binder and in September, 1961 brought the present action for a declaratory judgment, contending that, by reason of Riva’s concealment of a material fact, it was not liable to Biva on its policy and that Lumbermen’s was liable to defend Biva under its 30-day binder, which it claimed was in effect on the day of the accident. On January 18,1962, the 1770 Corporation brought an action for a declaratory judgment that Cosmopolitan was its insurer under the original policy and the two declaratory judgment actions were consolidated.
The court at Special Term, New York County, properly found that both Cosmopolitan and Lumbermen’s were on the risk at the time of the accident. Since Lumbermen’s coverage was in twice the amount of Cosmopolitan’s, the court further concluded that, under the terms of both policies and as between the two *152 insurers, Lumbermen’s was to be charged with two thirds of the total $46,666.66 owed by the two companies — or $31,111.10 — and Cosmopolitan with one third, or $15,555.55. Accordingly, the court ruled that, since each party had contributed $23,333.33, Cosmopolitan was entitled to be reimbursed from Lumbermen’s to the extent of $7,777.78.
Upon appeal by both parties, the Appellate Division modified and granted judgment against Cosmopolitan and in favor of Lumbermen’s for the entire $46,666.66. The unanimous court erroneously declared that, because Buhler had authority from Biva to substitute Cosmopolitan’s binder for Lumbermen’s, Lumbermen’s retroactive cancellation “ flat ” of its Biva policy was to be given effect as against Cosmopolitan.
An insured and an insurer are, of course, free to agree upon the “ cancellation flat” of a binder before matured risk and, so long as the rights of no third party are affected (cf., e.g., Aetna Cas. & Sur. Co. v. O’Connor, 8 N Y 2d 359, 364 [1960]); Lauritano v. American Fid. Fire Ins. Co., 3 A D 2d 564, 567-568 [1st Dept, 1957], affd. 4 N Y 2d 1028 [1958]), there is no reason why an insured may not effectively cancel ‘1 flat ’ ’ even after the occurrence of an insurable accident. This is not, however, what happened in the present case.
When Buhler notified Lumbermen’s of the accident and Lumbermen’s assigned an investigator to the claim and opened a file pertaining to the accident, the risk assumed pursuant to the binder had fully matured into a responsibility. And since Cosmopolitan had no right to disclaim liability for the accident because (1) it deliberately assumed the insurance of Riva retroactively to June 1, 1958, and (2) no fraudulent misrepresentation was found by the courts below on the part of either Riva, the insured, or on the part of Buhler, its agent, Cosmopolitan was “ on the risk ” as of the June 19 accident.
It is clear that Lumbermen’s, while it was the only insurance carrier protecting the insured, could not have effectively can-celled the binder insofar as the injured party was concerned after June 19, the date of the accident. The right of Higgins, the injured party, to proceed against Lumbermen’s had fully matured at that time. Similarly, the endorsement by Cosmopolitan on August 7, 1958 on the policy issued to 1770 First Avenue Corporation could not have released Lumbermen’s from *153 its liability for the accident occurring' during the period of coverage, since Cosmopolitan’s coinsurance clause limited any liability it would incur to its proportional share. Accordingly, on the date of the accident the two carriers were coinsurers, and Riva could only release Lumbermen’s from the obligation owing under its coinsurance clause if Riva was prepared to take the place of Lumbermen’s as coinsurer with Cosmopolitan, a third party neither involved nor consulted as to the cancellation agreement. Riva, of course, did not expressly agree to assume any obligation incurred by Lumbermen’s during the period the binder was in effect and, in this suit for declaratory judgment between the two insurers, it cannot be inferred that Riva intended to take Lumbermen’s place and assume its proportionate share of the loss. Any such determination between Riva and Lumbermen’s can only be reached after a trial of these issues.
As indicated, we do not question that, after the risk had matured, Riva could have voluntarily relinquished its rights against Lumbermen’s but, insofar as Cosmopolitan’s obligation to Riva is concerned, it could not be increased by Riva’s subsequently agreeing to cancel Lumbermen’s binder ab initia. As affecting Cosmopolitan’s liability to Riva, Riva could not alter it nunc pro tune any more than a court can ‘ ‘ record a fact as of a prior date when it did not then exist. ’ ’ (Guaranty Trust & Safe Deposit Co. v. Philadelphia, R. & N. E. R. R. Co., 160 N. Y. 1, 7 [1899]; Merrick v. Merrick, 266 N. Y. 120, 122 [1934].)
Thus when Cosmopolitan issued its policy, including the standard coinsurance clause, which occurred before the purported cancellation between Lumbermen’s and Riva, Cosmopolitan’s liability for the loss amounted to its proportionate share, or $15,555.55, as the trial court properly found. Between the two carriers, then, Cosmopolitan is liable only for this amount, and Lumbermen’s for its proportionate share, or $31,111.10. This determination is not meant to intimate, however, any opinion as to any controversy between Lumbermen’s and Riva based upon the cancellation “ flat ” of the Lumbermen’s binder. The result of this declaratory judgment is only to determine the respective rights as between the two carriers.
The order of the Appellate Division should be reversed, and the judgment of the Supreme Court, New York County, reinstated, with costs in this court and in the Appellate Division.
*154 Judges Van Voorhis, Scileppi and Keating concur with Judge Burke; Chief Judge Full and Judge Bergan dissent and vote to affirm upon the opinion at the Appellate Division; Judge Breitel, taking no part.
Order reversed, etc.