CASTO, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Appellees.

[Cite as *Casto v. State Farm Mut. Auto. Ins. Co.* (1991), 72 Ohio App.3d 410.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–846.

Decided Feb. 7, 1991.

*Denmead, Blackburn & Willard, Robert H. Willard* and *Gary A. Gillett,* for appellant Deborah E. Casto.

*Hamilton, Kramer, Myers & Cheek, Emerson Cheek III* and *Mark H. Gams,* for appellee State Farm Mutual Automobile Insurance Company.

*Crabbe, Brown, Jones, Potts & Schmidt, Larry H. James* and *Andrew W. Cecil,* for appellee Donald W. Dick.

*Luper, Wolinetz, Sheriff & Neidenthal* and *Stanley L. Myers,* for appellee Central Benefits Mutual Insurance Company f.k.a. Blue Cross of Central Ohio.

REILLY, Presiding Judge.

Plaintiff was involved in an auto accident while driving her Jaguar on November 20, 1987. Upon making a claim with her insurance company, plaintiff was advised that her policy had been cancelled on October 29, 1987, for failure to pay the premium. Plaintiff brought this declaratory judgment action seeking a declaration that her insurance policy was in effect as of the date of the accident. The trial court rendered a decision declaring that the insurance policy was not in force when the accident occurred.

Plaintiff appeals therefrom, asserting the following assignments of error:

"1. The trial court erred in failing to hold that the insurer's termination of coverage was ineffective as a matter of law because the insurer designated the U.S. Post Office as its agent and, therefore, a premium payment on the insurance policy was paid when mailed.

"2. The trial court erred in failing to hold that the insurer should have provided coverage for the accident involving the insured vehicle where the insured did not receive notice of cancellation of the policy, and took the steps suggested by the insurer to continue coverage.

"3. The trial court erred in failing to hold that the insurer should have divided the premium on the second vehicle into installments for the policies written on both of the insured's vehicles in order to effectuate the intent of the parties to extend insurance coverage."

This case was submitted to the court for a decision based on the affidavits and depositions in the record. Based on these materials, the trial court made the following findings of fact. Defendant issued plaintiff an automobile insurance policy on her Jaguar in 1985. Plaintiff also insured a second automobile, a Porsche, with defendant. Sometime in September or early October, plaintiff received two renewal notices for her policy on the Jaguar, indicating that the next premium was due on October 10, 1987. Defendant mailed plaintiff a notice of cancellation on October 16, 1987, indicating that her policy would be cancelled on October 29, 1987. Plaintiff, however, denies receiving this notice. Four days later, on October 20, 1987, plaintiff placed two checks, one for the Jaguar and one for the Porsche, in two preaddressed envelopes provided by defendant. She then gave these envelopes to Donald Dick, who mailed them the same day. While the envelope containing the Porsche payment was timely delivered, the Jaguar payment was never received by defendant and the envelope was subsequently returned to plaintiff after the accident stamped "Returned for postage."

The first assignment of error addresses the dispositive legal issue raised in this case: whether a premium payment is effective when mailed or when it is received by the insurance company.

R.C. 3937.31 provides that an automobile insurance policy shall not be cancelled within the first two years of issue except pursuant to the terms of the policy, when such "cancellation" is in accordance with the provisions of R.C. 3937.30 to 3937.39, and where the policy is cancelled for one of the reasons enumerated in the statute. For purposes of these sections, the term "cancellation" includes a refusal to renew a policy of insurance. *DeBose v. Travelers Ins. Co.* (1983), 6 Ohio St.3d 65, 6 OBR 108, 451 N.E.2d 753. One of the reasons for which such a policy may be cancelled is nonpayment of a premium. R.C. 3937.31(A)(3).

The cancellation notice mailed to plaintiff on October 16, 1987, indicated that the policy would be cancelled for nonpayment of the premium on October 29, 1987. Defendant admits that, if payment had been made before that date, the policy would not have been cancelled. The facts indicate that while the payment was mailed before October 29, it was not received by the insurance company. The issue then is whether the insurance premium is effectively paid on the day it was mailed or the day it is received by the company.

An insurance policy is a contract and the relationship between the insurer and its insured is contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262, 472 N.E.2d 1061, 1062. The renewal of an insurance policy is generally considered a new contract of insurance to which the requirements of offer and acceptance apply. 12 Appleman, Insurance Law and Practice (1981) 387, Section 7641; *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 44, 19 OBR 35, 37, 482 N.E.2d 599, 602 (the renewal of a term policy of insurance constitutes a new contract of insurance).

The well-established general rule of contract formation is that an acceptance transmitted in a form invited by the offer is operative as soon as it is put out of the offeree's possession, regardless of whether it ever reaches the offeror. Restatement of the Law 2d, Contracts (1981) 151, Section 63(a); *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 68, 7 OBR 76, 80, 454 N.E.2d 158, 164. This is the so-called "mailbox rule" which states that in the absence of any limitation to the contrary in the offer, an acceptance is effective when mailed. It is sometimes said that when an offer is sent by mail, the offeror has made the post office his agent for acceptance, although this explanation has been severely criticized. 1 Corbin, Contracts (1963) 335, Section 78. In any case, one of the parties must bear the risk of loss. As the offeror has the power to condition acceptance of the offer on actual receipt,

the courts have uniformly held that, in the absence of language to the contrary, an acceptance is effective when mailed.

The "mailbox rule" is also universally applied to the payment of insurance premiums, generally without regard to whether the payment constitutes the acceptance of a new contract or simply an installment payment on a continuing contract of insurance. Couch on Insurance 2d (1961) 135–139, Section 31:105; 14 Appleman, Insurance Law and Practice (1981) 410–411, Section 7990. Here it is said that, where the insurance company has authorized or acquiesced in the payment of premiums by mail, and in the absence of any contrary provisions in the policy, premium payments are deemed effective when properly posted.

■ To be effective upon mailing, however, the acceptance must be properly dispatched. The offeree must properly address the acceptance and take whatever other precautions as are ordinarily observed in the transmission of similar messages. Restatement of the Law 2d, Contracts (1981) 161, Section 66. In the case of the United States mail, postal regulations are generally controlling as to the acts required to properly dispatch a letter. *Id.* at Comment *c.* Specifically, in *Hitz v. Ohio Fuel Gas Co.* (App.1932), 43 Ohio App. 484, 490, 13 Ohio Law Abs. 393, 396, 183 N.E. 768, 770, it was held that four elements must be shown to establish the proper mailing of a document:

" * * * They are the instrument's execution, its inclosure in a proper container correctly addressed and stamped, that it was placed in the mails, and, where time is of the essence, that it was mailed in time. * * *"

It is undisputed that defendant provided plaintiff with pre-addressed envelopes and thus authorized plaintiff to mail her premium payments. Furthermore, the renewal notices contain no language requiring actual receipt before payment is deemed effective. Whether the policy of insurance contains such language we do not know since the policy is not contained in the record on appeal. Finally, plaintiff and Donald Dick testified in their depositions that the Jaguar and Porsche payments were mailed on October 20, 1987, nine days before the cancellation date. Their testimony is further supported by the fact that the Porsche payment was actually received by defendant before the cancellation date. Thus, the only remaining question is whether the payment was properly dispatched.

Plaintiff testified that the check and renewal notice were placed in a pre-addressed and stamped envelope. Donald Dick also testified that both envelopes were stamped when he mailed them. Nevertheless, the envelope did not bear any postage when it was returned to plaintiff.

Defendant maintains that the letter was not properly dispatched as it lacked a return address. No such requirement is set forth in *Hitz* nor do we find that a return address is an element essential to the proper dispatch of a letter. A return address would not have facilitated the envelope's transmission to defendant through the mails, and even if it would have facilitated a more rapid return to plaintiff, under the mailbox rule the payment would still have been effective when mailed. Moreover, defendant has not cited, nor are we aware of any postal regulations requiring the use of a return address on first class mail.

Thus, the crucial question is whether the envelope containing the Jaguar payment was stamped before it was mailed. While neither party requested that the court make findings of fact and conclusions of law pursuant to Civ.R. 52, the court's decision includes findings of fact, which will be considered by this court as if such a request had been made. *Feller–Olmsted Co. v. J. Ritchie & Sons, Inc.* (1963), 119 Ohio App. 148, 26 O.O.2d 339, 191 N.E.2d 177. The burden of proving coverage was upon the plaintiff and, consequently, plaintiff bore the burden of proving that the envelope was stamped when it was mailed. The trial court made a number of factual findings, but did not specifically address this question of fact. When the findings of fact leave some material fact undetermined, a reviewing court will presume that the issue of fact was not proved by the party having the burden of proof. *McShane v. Keiser* (1958), 108 Ohio App. 514, 516–517, 9 O.O.2d 495, 496–497, 155 N.E.2d 709, 710. The court need not indicate which facts were not proved by the evidence presented. *Lugger v. Wolford* (App.1955), 72 Ohio Law Abs. 227, 134 N.E.2d 395. We thus presume that the trial court concluded that the envelope was not stamped when mailed, and there is sufficient evidence in the record to support such a finding. As the envelope was not properly dispatched, the payment was not effective upon mailing under the facts of this case.

The first assignment of error is not well taken.

■ In the second assignment of error, plaintiff contends that defendant's cancellation of the insurance policy was ineffective as plaintiff did not receive the cancellation notice sent to her pursuant to R.C. Chapter 3937. Reviewing the statutes involved, it is unclear whether actual notice is required to effectively cancel an insurance policy for nonpayment of a premium. R.C. 3937.33, applicable to cancellations prior to the expiration of an insurance policy, apparently requires only that the cancellation notice be mailed, not received. See *Donaldson v. Grange Mut. Cas. Co.* (Dec. 11, 1989), Clinton App. No. CA89–07–011, unreported, 1989 WL 149411; but, see, *Smith v. Globe American Cas. Co.* (1973), 38 Ohio Misc. 82, 86, 67 O.O.2d 307, 309, 313

N.E.2d 21, 24 (indicating in dicta that actual notice is required under R.C. 3937.33). R.C. 3937.32(E), specifically applicable to cancellation for nonpayment of a premium, provides only that the cancellation must be "pursuant to a written notice."

This court has not specifically decided whether actual notice is required under this section and both the applicable statutes and case law are somewhat contradictory. See *Nationwide Ins. Co. v. Brown* (May 17, 1990), Franklin App. No. 89AP–1273, unreported, 1990 WL 65655, where this court found it unnecessary to specifically decide the question. *General Motors Acceptance Corp. v. DiPaolo* (Sept. 21, 1989), Franklin App. No. 89AP–441, unreported, holding that mere mailing is sufficient under R.C. 3937.31(C), cancellation of a policy within the first ninety days, and *Smith, supra,* holding that actual receipt of the notice of cancellation is required by the " 'standard cancellation clause' in the policy" as well as by the terms of R.C. 3937.33. See, generally, Annotation, Actual Receipt of Cancellation Notice Mailed by Insurer As Prerequisite to Cancellation of Insurance (1985), 40 A.L.R.4d 867.

Whether or not the statute requires actual receipt, plaintiff does not show error under the facts of this case. Plaintiff admits that she was aware that the policy would be cancelled more than ten days before the effective cancellation date. Since plaintiff was aware of the facts contained in the cancellation notice, receipt is unnecessary in this case even if it is otherwise required by the statute.

The second assignment of error is not well taken.

In the third assignment of error, plaintiff maintains that defendant was required to divide the premium payment received for the Porsche and apply it pro rata to both vehicles. As plaintiff is unable to establish such a duty under either the statute or the terms of the policy, the third assignment of error is also not well taken.

The assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC and WILSON, JJ., concur.

ROGER B. WILSON, J., of the Champaign County Court of Common Pleas, sitting by assignment.