OPINION
{¶ 1} Motorists Mutual Insurance Company ("Motorists") appeals from a judgment of the Vandalia Municipal Court, which denied its motion for summary judgment and granted judgment as a matter of law in favor of Joseph A. Pearson, its insured. The parties' dispute concerns the date on which the policy of insurance issued by Motorists was canceled.
 {¶ 2} The following facts are undisputed:
 {¶ 3} On September 13, 2001, a vehicle driven by Joseph A. Pearson, a minor, was involved in an automobile accident with vehicles driven by John Loxley and Althena Golson. Loxley suffered damages in the amount of $1,797.22 and Golson suffered $8,117.75 in damages. Loxley's insurer, State Farm Mutual Automobile Insurance Company ("State Farm") paid Loxley $1,297.22, representing the amount of his damages minus a $500 deductible. Golson's insurer, Geico Direct Insurance Company ("Geico") paid her $8,117.75 for her damages. The parties have stipulated to Geico's and State Farm's subrogation claims.
 {¶ 4} The vehicle driven by Pearson was owned by his grandfather, Ronald K. Payne. Motorists issued a policy of automobile insurance to Payne for the term February 28, 2001, to August 28, 2001 ("the policy"). (We note that, according to Lou Cinda Hughes, an insurance agent with Simpkins-Dellis Insurance Agency, the policy was originally written on August 28, 2000). Pearson was listed as an insured driver under the policy. Payne died testate on March 24, 2001, and the premium for the policy was paid by Pearson's mother, Rhonda Darlington, on April 3, 2001. The policy was subsequently held by "Estate of Ronald K. Payne." (We recognize that Pearson asserts that the named insured was "Estate of Ronald K. Payne, c/o Richard Duncan.") The executor of Payne's estate was Key Bank.
 {¶ 5} The policy contained the following provisions:
 {¶ 6} "Termination
 {¶ 7} "A. Cancellation. This policy may be cancelled during the policy period as follows:
 {¶ 8} "1. The named insured shown in the Declarations may cancel by:
 {¶ 9} "a. returning the policy to us; or
 {¶ 10} "b. giving us advance written notice of the date cancellation is to take effect.
 {¶ 11} "2. We may cancel, subject to paragraph 3 below, by mailing to the named insured shown in the Declarations at the address last known by us:
 {¶ 12} "a. at least 10 days notice:
 {¶ 13} "(1) if cancellation is for nonpayment of premium; * * *.
 {¶ 14} "C. Other Termination Provisions.
 {¶ 15} * * *
 {¶ 16} "3. The effective date of cancellation stated in the notice shall become the end of the policy."[1]
 {¶ 17} No further premiums were paid after the end of the policy period stated on the Declarations page, i.e., August 28, 2001. On September 5, 2001, eight days before the accident, Motorists sent Key Bank correspondence, care of Richard Duncan, indicating that the premiums on the policy were overdue and that the policy would be canceled on September 17, 2001. The following day, Hughes sent a Casualty Policy Change Request form to Pamela Goelz at Key Bank, requesting that she sign and return the form if the auto policy was to be canceled. On October 2, 2001, Goelz returned the form to Motorists, canceling the policy, effective August 28, 2001. On October 10, 2001, Motorists sent a letter to Key Bank, confirming the cancellation of the policy on August 28, 2001. On October 12, 2001, Rhonda Darlington contacted Hughes to advise her of Pearson's accident. Motorists became aware of the accident at that time.
 {¶ 18} As a result of the accident, Loxley and State Farm initiated litigation against Pearson and Brian C. Darlington, who had signed for Pearson's probationary driver's license. In a separate litigation, Golson and Geico also filed suit against Pearson and Motorists. The cases were subsequently consolidated. Pearson and Darlington filed a third-party complaint against Motorists, claiming that Pearson was entitled to coverage as an insured on the policy issued to the estate of Ronald Payne and that Motorists was responsible for paying Loxley's and Golson's claims against Pearson.
 {¶ 19} Motorists filed a motion for summary judgment, asserting that the policy had been canceled, effective August 28, 2001, by virtue of the Change Request form and that the policy was not in effect on the date of the accident. Pearson responded that the policy contained a cancellation provision, which required Motorists to provide ten days notice prior to terminating the policy for a failure to pay premiums. Pearson further argued Key Bank's letter of September 5, 2001, extended the policy term until September 17, 2001. In addition, he asserted that only Duncan had the authority to cancel the policy, and that the policy did not provide for cancellation retroactive to August 28, 2001.
 {¶ 20} On June 19, 2003, the magistrate overruled Motorists' motion, reasoning:
 {¶ 21} "The contract in question specifies that in order for the `insured' to effectively cancel the policy during the policy period, they [sic] may do so by giving advanced written notice of the date cancellation is to take effect. In this case, the insured as listed on the policy and as defined by the terms of the policy did not give such notice; nor, was the notice given in `advance'.
 {¶ 22} "But even more importantly, the policy period had already been extended by Motorists in its `Notice of Cancellation' which reads, in pertinent part, as follows: `Premium payment was due on 08/28/01. Your policy will be cancelled for nonpayment of premium on the `Cancellation Date' shown . . . if premium is not received by us before the `Cancellation Date' . . . shown. . . .' This notice was mailed to `Estate of Ronald K. Payne c/o of Richard Duncan' on September 5, 2001. Inasmuch as the Change Request mailed by Ms. Goelz was received after the September 17th date and did not give advance notice of cancellation, but rather a retroactive one, the Court finds that such purported cancellation was a nullity. In short, the executor attempted to cancel a contract which, by Motorists' own actions, had already been cancelled as of September 17th. Motorists Cancellation Notice complied with the terms of the contract and effectively extended the coverage period to September 17th. Since that date followed the date of the accident, Defendant was still covered under the policy of insurance at the time fo the accident on September 13th." (Citations omitted). The trial court found, as a matter of law, "that the policy in question was cancelled effective September 17, 2001, i.e. a date following the accident, but that coverage existed on the date of the accident, to wit: September 13, 2001."
 {¶ 23} Motorists filed objections to the magistrate's decision. On September 5, 2003, the trial court overruled the company's objections and adopted the decision of the magistrate in full. On June 29, 2004, the trial court issued a final judgment, disposing of remaining the claims.
 {¶ 24} The Supreme Court of Ohio has stated that "a trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment."Love v. Motorists Mut. Ins. Co. (1993), 86 Ohio App.3d 394,398, 620 N.E.2d 987, quoting Balson v. Dodds (1980),62 Ohio St.2d 287, 405 N.E.2d 293, paragraph one of the syllabus. Our review of the trial court's decision to deny Motorists' motion for summary judgment is de novo. Id.; see Helton v. Scioto Cty.Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See Stateex rel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181,183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
 {¶ 25} Motorists asserts three assignments of error on appeal, which we will address in an order that facilitates our analysis.
 {¶ 26} "2. The trial court erred when it concluded that motorists extended the contract through September 17, 2001. By the estate's request, the contract terminated August 28, 2001."
 {¶ 27} In its second assignment of error, Motorists asserts that the trial court erred when it concluded that the company had extended the contract through September 17, 2001. Motorists argues that its September 5, 2001, letter merely constituted an offer to extend the policy and did not, by itself, operate to extend it. The company asserts that it did not have the right to unilaterally extend the contract beyond August 28, 2001. We find no fault with the trial court's conclusion.
 {¶ 28} R.C. 3937.31(A) requires all automobile insurance policies to be issued for a period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewal is mandatory, as was the case with Payne's policy, the refusal to renew a policy is treated as a cancellation. Id. Nonpayment of premium is grounds for the cancellation of a policy. R.C. 3937.31(A)(3). In order for an insurer to cancel an auto insurance policy, the insurer must provide written notice of cancellation to the insured. R.C.3937.32. The notice must include, among other things, the policy number, the date of the notice, and the effective date of the cancellation. Id. "Where cancellation is for nonpayment of premium[,] at least ten days notice from the date of mailing of cancellation accompanied by the reason therefor shall be given." R.C. 3937.32(E). In addition to the cancellation requirements set forth by the General Assembly, the cancellation must also comport with the terms of the policy. R.C. 3937.31(A). In general, the policy "is cancelled on the effective date stated in the notice of cancellation." R.C. 3937.33. In our judgment, when a policy lapses during the mandatory renewal period, R.C. Chapter 3937 provides a "grace period," during which coverage continues until the date of cancellation in a valid notice of cancellation. See Pooler v. Shelby Mutual Ins. Co., (Dec. 23, 1985), Montgomery App. No. 9407; Gibbons v. Lightening Rod Mut.Ins. (June 3, 1992), Summit App. No. 15379.
 {¶ 29} In accordance with the statutory notice requirement, Payne's policy provided that Motorists was permitted to cancel the policy, with "at least 10 days notice . . . if cancellation is for nonpayment of premiums," by mailing a notice of cancellation to the named insured at the insured's last known address. It is undisputed that, on September 5, 2001, Motorists notified Payne's estate that the premium payment was due on August 28, 2001, and that the policy would be canceled for nonpayment of premium on the "cancellation date," i.e., September 17, 2001, if the premium was not received before 12:01 a.m. (standard time) on that date. As required by statute, the notice further included the policy number and a notice that the cancellation could be reviewed by the Superintendent of Insurance. By virtue of R.C. Chapter 3937, Motorists' notice of cancellation was not a conditional offer to renew coverage if the premium was paid prior to September 17, 2001. Rather, because the policy fell within the mandatory renewal period, R.C. 3937.30 et seq. required Motorists to continue coverage from the time that it mailed the notice of cancellation until the cancellation date in the notice (which was twelve days later).
 {¶ 30} Motorists cites to Casto v. State Farm MutualAutomobile Ins. Co. (1991), 72 Ohio App.3d 410, 594 N.E.2d 1004, in support of its assertion that the notice of cancellation was merely an offer to renew the policy. In Casto, the Tenth District Court of Appeals stated: "The renewal of an insurance policy is generally considered a new contract of insurance to which the requirements of offer and acceptance apply." Id. at 413. The Casto court cited Benson v. Rosler (1985),19 Ohio St.3d 41, 482 N.E.2d 599, for the proposition that the renewal of a term policy of insurance constitutes a new policy of insurance.
 {¶ 31} We find Casto unpersuasive in light of Wolfe v.Wolfe, 88 Ohio St.3d 246, 2000-Ohio-322, 725 N.E.2d 261. InWolfe, the supreme court recognized that R.C. 3937.31 was enacted "to ensure that consumers of automobile liability insurance are able to maintain the level of coverage and policy limits that they had originally contracted for" and that "the statute [was] intended to protect insureds from unilaterally being left without the protections that automobile insurance coverage affords by requiring that insurers provide an adequate method of notification when canceling insurance policies." Id. at 249-50. The court further stated:
 {¶ 32} "It is clear that the public policy of this state, as gleaned through the Acts of the General Assembly, is to ensure that all motorists maintain some form of liability coverage on motor vehicles operated within Ohio. R.C. 3937.31(A) is designed to further that policy. In DeBose v. Travelers Ins. Cos.
(1983), 6 Ohio St.3d 65, 67, 6 OBR 108, 110, 451 N.E.2d 753,755-756, this court stated that `[i]t is beyond reasonable dispute that R.C. 3937.30 et seq. are primarily designed to protect the public from the dangers which uninsured motorists pose. R.C. 3937.31(A) attempts to ameliorate this threat by mandating that insureds whose policies have been in effect for less than two years receive notice of any planned cancellation of their policies in time for them to secure new coverage.'"
 {¶ 33} Wolfe, 88 Ohio St.3d at 250.
 {¶ 34} The Supreme Court went on to hold:
 {¶ 35} "[P]ursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. We further hold that the commencement of each policy period mandated by R.C.3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy."
 {¶ 36} Addressing its prior decision in Benson
specifically, it stated: "Given the language of R.C. 3937.31(A), that determination in Benson is confusing at best and flat out wrong at its worst. * * * We now believe that in Benson the majority misconstrued R.C. 3937.31(A). The discussion of R.C.3937.31(A) in the Benson court's per curiam opinion could be described as cursory at best. The Benson majority failed to consider the statute's proper application, as well as the public policy behind the enactment, to contracts of automobile liability insurance issued in this state. In effect, the majority's final determination in Benson renders the language of R.C. 3937.31(A) meaningless." Id. at 251. Accordingly, the Casto court's decision, which is based on Benson, has little, if any, persuasive value. Based on R.C. 3937.31 — R.C. 3937.33, and the terms of the policy, the estate's coverage continued until the cancellation date in the cancellation notice, i.e., September 17, 2001. The trial court, therefore, did not err in concluding that Motorists had extended coverage until September 17, 2001.
 {¶ 37} Motorists' second assignment of error is overruled.
 {¶ 38} "3. The trial court erred when it indicated that the named insured did not request the cancellation. The named insured was the estate of Ronald K. Payne. Key Bank, the executor of the estate, requested cancellation."
 {¶ 39} In its third assignment of error, Motorists asserts that the trial court erred in concluding that the named insured did not request the cancellation. The named insured is listed in the Declarations as:
 {¶ 40} ESTATE OF RONALD K. PAYNE C/O RICHARD DUNCAN 7501 PARAGON RD. DAYTON, OH 45459.
 {¶ 44} Motorists argues that Richard Duncan is neither the named insured nor the executor of Payne's estate. It further states that Key Bank was the executor for the estate of Ronald Payne, and that Pamela Goelz, on behalf of Key Bank, properly signed the estate's request to cancel the policy, effective August 28, 2001. Pearson responds that Motorists mailed statements, the notice of cancellation, and a letter confirming cancellation of the policy to Duncan. It asserts (and the trial court apparently agreed) that the named insured on the policy included Duncan, the contact person.
 {¶ 45} In our judgment, the naming of Duncan as the contact person in the Declarations page did not render him either the insured or the insured's sole authorized agent under the policy. The record demonstrates that the policy was originally issued to Payne as the insured and that, subsequent to his death, the policy was altered to reflect his estate as the insured. The fact that Duncan was listed as the contact person merely indicated to whom correspondence should be addressed at the Paragon Road address.
 {¶ 46} In its April 9, 2001, Entry Appointing Fiduciary, the Montgomery County Probate Court appointed Key Bank, National Association, as executor for the estate of Ronald K. Payne. It is undisputed that Pamela Goelz was an employee of Key Bank, and there is no evidence that she lacked the authority to act for Key Bank in its fiduciary capacity. To the contrary, according to Hughes, Goelz also canceled Payne's homeowner's insurance policy with Motorists, acting for Key Bank as executor. (We note there is no evidence that Duncan, an attorney, was associated with Key Bank or had any authority to act for the estate.) As executor for Payne's estate, Key Bank had the authority to send a notice of cancellation to Motorists in order to terminate the automobile policy issued to the estate. The trial court therefore erred in concluding that the insured listed on the policy did not send a cancellation request to the insurer when Goelz sent the Change Request form to Motorists in October 2001. However, this error was harmless given our disposition of the other assignments.
 {¶ 47} Motorists' third assignment of error is overruled.
 {¶ 48} "1. The trial court erred in its finding that the estate's cancellation of the contract was a nullity. The requirement of advanced written notice solely benefits motorists. As such, motorists could, and did, waive that requirement. The contract was canceled by the estate effective August 28, 2001."
 {¶ 49} In its first assignment of error, Motorists asserts that the trial court erred in finding that Key Bank's cancellation of the contract violated the terms of the policy, because it did not provide Motorists with advanced written notice. Motorists asserts that the advanced written notice requirement in the policy was to its benefit and was, therefore, a term which it could (and did) waive. The company thus claims that the Policy Change form validly canceled the contract. Pearson responds that the purported cancellation, by means of the Policy Change form, "would be ineffective because the policy was cancelled previously on September 17, 2001, pursuant to [Motorists'] own `Notice of Cancellation.'" Pearson further asserts that Motorists should be estopped from asserting that the policy was canceled retroactively.
 {¶ 50} In general, "an insured may unilaterally cancel a policy with no further act by the insurer required to effectuate the cancellation." Grismer Tire Co., Inc., v. Meridian MutualIns. Co. (Jan. 18, 1995), Montgomery App. No. 14688; R.C.3937.31(B)(1) (allowing changes in coverage or policy limits, cancellation or nonrenewal for any reason at the request of or with the consent of the insured.). Once canceled by the insured, the insurer cannot extend the effectiveness of the policy. Id. With regard to the policy at issue, in order to terminate the policy, the estate was required either to return the policy to Motorists or to give advance written notice of the date that cancellation was to take effect.
 {¶ 51} As noted by Motorists, several courts have held that termination provisions which require advance written notice to the insurer are waivable by the insurer. In Cash v. MotoristsMutual Ins. Co. (Dec. 12, 1992), Butler App. No. CA92-05-089, the court stated: "Courts have held that the provisions in an insurance policy that notice shall be given to the insurance company and that the notice shall state the time the cancellation shall be effective merely serve to forestall a retroactive notice of cancellation and thus are for the benefit of the insurer. As the provisions inure to the insurer's benefit, these courts agree that the provisions may be waived by the insurer." Id. (citations omitted); see, also, Turner v. Progressive Specialty Ins. Co.
(1991), 72 Ohio App.3d 381, 387, 594 N.E.2d 986. We likewise agree that because the benefit of the Key Bank's notice of cancellation inured to Motorists, Motorists was free to waive that requirement and to permit Key Bank to cancel the estate's policy, despite the failure to specify a future cancellation date.
 {¶ 52} Motorists has asserted that by waiving the advance notice requirement, it accepted a retroactive notice of cancellation from Payne's estate, the insured. We agree with Pearson and the trial court that, due to the September 17, 2001, cancellation date in Motorists' notice of cancellation, the estate could not have canceled the policy by means of the October 2001 Change Request form. Stated simply, because the policy terminated on September 17, 2001, based on the nonpayment of premiums, there was no contract to cancel in October 2001. Because the contract had previously terminated, Key Bank's Change Request form could not effect a cancellation.
 {¶ 53} The question therefore becomes whether Motorists and the estate may and did subsequently agree to modify the cancellation date and make the cancellation retroactive to August 28, 2001. In general, parties to an insurance contract may agree to alter or cancel a policy. "[P]arties retain the right to cancel a contract by mutual agreement, and a cancellation by mutual assent is governed by ordinary contract principles."Wright v. MedAmerica Intern. Ins., Ltd., Montgomery App. No. 19809, 2003-Ohio-5723, at ¶ 17; McGuire v. Mills (Aug. 30, 1999), Ross App. No. 98CA2462.
 {¶ 54} The right to cancel an insurance contract, however, is not unlimited. We have stated that a policy of insurance may be canceled at any time before loss by an agreement between the parties, express or implied from the circumstances, independent of the terms of the policy. (Emphasis added) Auto-OwnersInsurance Co. v. Bruns (Dec. 14, 1979), Montgomery App. No. 6313; see Commercial Union Insurance Company v. TravelersInsurance Company, Grange Mutual Casualty Company (Mar. 12, 1981), Franklin App. No. 80AP-354. Other courts have also refused to permit retroactive cancellations where the cancellation will affect the rights of third parties. McGuire, supra.
 {¶ 55} As did the trial court, we find McGuire to be analogous. In McGuire, Bryan Mills was covered under a Minnesota CNA insurance policy, effective from October 21, 1992, to October 21, 1993, issued to his aunt and uncle. In March 1993, his uncle moved to Ohio. On May 27, 1993, the uncle signed an application for Ohio insurance with CNA, and on July 14, 1993, he returned it to the company. On July 25, 1993, Bryan Mills was involved in an accident. CNA issued the Ohio policy to the Mills family on July 30, 1993, with a stated effective date of June 18, 1993. The Minnesota policy had higher policy limits than the Ohio policy. During litigation, the parties disputed whether the Minnesota or the Ohio policy was effective at the time of the accident, based on the language and effect of the policy application. Among the issues addressed by the Fourth District Court of Appeals was whether the Ohio policy was made effective, retroactive to June 18, 1993, which rendered the Minnesota policy terminated as of that date, due to an automatic termination provision in the Minnesota policy. The court of appeals concluded that the effective date could not be made retroactive to June 18, 1993, reasoning:
 {¶ 56} "In the absence of the July 25, 1993, accident, we would have no problem endorsing this interpretation of the actions taken by CNA and the Mills. However, in light of the July 25, 1993 accident, general insurance principles and Ohio statutory law dictate the opposite result.
 {¶ 57} "Parties to an insurance contract may generally fix the effective date of insurance, which may be prior to actual issuance of the policy. See New York Life Ins. Co. v. Clutts
(1932), 125 Ohio St. 555, 182 N.E. 500, paragraph one of the syllabus (effective date of insurance is that stated on the policy, regardless of date of delivery); 3 Appleman on Insurance 2d, supra, at 275-76 and 283-88, Sections 16.1 and 16.2. In this case, however, the effective date of the Ohio policy also affects cancellation of the Minnesota policy, insofar as the Minnesota policy's automatic termination clause purports to apply upon the `effective date of the other insurance.' Thus, retroactive commencement of the Ohio policy would also serve as retroactive cancellation of the Minnesota policy. Although CNA and the Mills may have intended this dual retroactivity, R.C.3929.05 prevents us from giving the retroactive cancellation any effect. R.C. 3929.05, entitled `Liability of insurance company for bodily injury or death,' states in part:
 {¶ 58} "No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after said assured has become responsible for such loss, damage, or death, and any such cancellation or annullment [sic] is void. (Emphasis added.)
 {¶ 59} "Although the parties intended to cancel the Minnesota policy as of June 18, 1993, R.C. 3929.05 prevents any such retroactive cancellation when the Mills were already responsible for a loss by virtue of the July 25, 1993 accident. SeeCommercial Union Ins. Co. v. The Travelers Ins. Co. (Oct. 23, 1980), Franklin App. No. 80AP-354, unreported, appeal after remand (Sept. 27, 1983), Franklin App. No. 82AP-465, unreported; see, also, Couch on Insurance 3d, supra, at Section 31:47 (parties may cancel insurance contract by agreement `provided the rights of third parties are not injured thereby') and Section 31:36 (cancellation by insured is ineffective to relieve insurer from liability for accidents occurring before the cancellation). The appellee's rights under the then-effective Minnesota policy had fully matured as of the accident date, precluding any cancellation. See Cosmopolitan Mut. Ins. Co. v. Lumbermen's Mut.Ins. Cas. Co (1967), 20 N.Y.2d 145, 281 N.Y.S.2d 993,228 N.E.2d 893, 895 (retroactive cancellation of binder ineffective after date of accident). Under the circumstances presented here, the Minnesota policy's automatic termination clause could not operate to terminate coverage prior to the issuance of the Ohio policy, notwithstanding the Ohio policy's effective date." McGuire,
supra.
 {¶ 60} In the present case, we find that the occurrence of an accident when the policy was in effect precluded Motorists and Payne's estate from validly canceling the policy retroactive to a date prior to the accident. Such a conclusion is consistent with the paternalistic public policy in this state which seeks to prevent insureds, particularly motorists, from suffering lapses in insurance coverage through inadvertence and to safeguard the rights of injured parties against insurers. See R.C. 3929.05; R.C. 3937.32; McGuire, supra. Certainly, third-parties would have been affected by the cancellation. See Hartford Accident Indemnity Co. v. Randall (1932), 125 Ohio St. 581, 585,183 N.E. 433 ("An injured person has a potential interest and a substantial right in the policy from the very moment of his injury."). Moreover, we disagree that a judgment against estate was required in order for the parties to be precluded from canceling the policy. Accordingly, the trial court did not err in concluding that the October 2001 Change Request sent by Goelz and received by Motorists on October 10, 2001, did not validly alter the cancellation date of the policy from September 17, 2001, to August 28, 2001, despite the parties' apparent intent to do so.
 {¶ 61} Motorists' first assignment of error is overruled.
 {¶ 62} The judgment of the trial court will be affirmed.
Fain, P.J. and Young, J., concur.
[1] We note that an Automatic Termination provision that was contained in a prior version of the policy was not included in the Amendment of Policy Provisions — Ohio.