New York Mar. & Gen. Ins. Co. v Kookmin Best Ins. Co., Ltd. (2024 NY Slip Op 50278(U))

[*1]

New York Mar. & Gen. Ins. Co. v Kookmin Best Ins. Co., Ltd.

2024 NY Slip Op 50278(U)

Decided on March 12, 2024

Supreme Court, New York County

Ramseur, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 12, 2024
Supreme Court, New York County

New York Marine and General Insurance Company, 3105 Decatur Associates LLC, Plaintiff,

against
Kookmin Best Insurance Company, Limited, Defendant.

Index No. 653300/2019

NY Marine and General Insurance: Weber Gallagher Simpson Stapleton Fires & Newby
3105 Decatur Associates LLC: Weber Gallagher Simpson Stapleton Fires & Newby
Kookmin Best Insurance Company, Limited: Chartwell Law

Dakota D. Ramseur, J.

The following e-filed documents, listed by NYSCEF document number (Motion 005) 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155 were read on this motion to/for REARGUMENT/RECONSIDERATION.
The following e-filed documents, listed by NYSCEF document number (Motion 005) 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155 were read on this motion to/for RENEW/REARGUE/RESETTLE/RECONSIDER.
In 2019, plaintiffs New York Marine and General Insurance Company (hereinafter, "NY Marine") and 3105 Decatur Associates, LLC ("Decatur") (a NY Marine policyholder) commenced this declaratory judgment and breach-of-contract action against Kookmin Best Insurance Company, Limited ("KBIC"). Plaintiffs allege that KBIC issued a Business Owner's policy to Norwood Discount LLC ("Norwood") that obligated KBIC to defend and indemnify Decatur, as a named additional insured on the policy, for liabilities arising from a third-party's alleged injuries on a premise Decatur owned but leased to Norwood. In this motion sequence (005), NY Marine and Decatur move for an order pursuant to CPLR 2221 (d) granting them leave to reargue the Court's Decision and Order dated June 30, 2023 (the "June 2023 Decision") that granted KDIC's motion for summary judgment. Plaintiffs contend that the Court's previous decision rested on misapprehensions of 2-10 Jerusalem Ave. Realty v Utica First In. Co. (62 AD3d 481 [1st Dept 2009]) and Cosmopolitan Mutual Insurance Company v Lumbermen's Mutual Casualty Company (20 NY2d 145 [1967]) and ignored the precedential value of Truax v [*2]State Farm Ins. Co. (101 Misc. 23 1031 [Sup. Ct. Onondaga County 1979].) KBIC opposes the motion to reargue in its entirety. For the following reasons, plaintiffs' motion to reargue is granted, and upon reargument, the Court adheres to its prior determination.
As the Court's June 2023 Decision made clear, the factual background in this litigation is undisputed. In 2009, Decatur leased the premises located at 358 East 204th Street, Bronx, New York, to AVS Pharmacy Inc, who then assigned its right to Norwood. (NYSCEF doc. no. 81, assignment of lease.) The lease required Norwood to maintain general public liability insurance in favor of Decatur against claims for bodily injury and property damage occurring on the premise, which Norwood did through a KBIC-issued Business Owner's policy. (NYSCEF doc. no. 80 at ¶ 4.) This policy had an initial policy period running from January 15, 2015, to January 15, 2016, though the parties renewed it through January 15, 2017. (NYSCEF doc. no. 83, KBIC policy.) Decatur was listed on the policy as an additional insured.
Eight days after the policy expired, on January 23, 2017, Norwood sent KBIC a request to retroactively cancel the policy effective March 1, 2016, explaining that it closed its store on the premises on that date. (NYSCEF doc. no. 86, cancellation request.) As proof, on February 27, 2017, Norwood's certified public account sent KBIC a letter stating, "please be advised that Norwood Discount LLC was closed since March 31, 2016, due to the sudden death of store manager [sic]." (NYSCEF doc. no. 89, Norwood letter.) On March 3, 2017, approved Norwood's request to cancel the insurance policy effective March 1, 2016, and returned $2,533 in premiums that Norwood had paid from March 2016 through January 2017. (NYSCEF doc. no. 90, email approval.)
On March 1, 2017, Nicolas Bautista-Gomez, the plaintiff in the underlying personal injury and premise liability action, informed Decatur that he had sustained injuries in a trip and fall on the premises on December 31, 2016. (NYSCEF doc. no. 92, Bautista-Gomez letter.) Five days after Norwood's retroactive cancellation request had been approved, on March 8, 2017, NY Marine, as the underwriter of Decatur's insurance policy, sent a tender letter to KBIC requesting it defend and indemnify Decatur in the underlying action. (NYSCEF doc. no. 95, tender letter.) Thereafter, KBIC rejected NY Marine's request on March 13, 2018, citing the retroactive cancellation as of March 1, 2016. (NYSCEF doc. no. 96, tender rejection letter.) There are no allegations that either Norwood or KBIC knew of Bautista-Gomez's alleged trip and fall prior to canceling the insurance contract and selecting March 31, 2016, as the effective cancellation date.
Given that the parties agreed on underlying facts, the only issue before the Court in the June 2023 Decision was whether "KBIC's policy was effective on December 31, 2016, when the underlying injury occurred, or whether Norwood's January and February 2017 request to cancel the policy effective March 1, 2016, constitute[d] an effective cancellation on that date." (See NYSCEF doc. no. 137 at 3, June 2023 Decision and Order.) In determining that Norwood had effectively cancelled its KBIC policy effective March 1, 2016, the Court principally relied upon 2-10 Jerusalem Ave. There, a tenant met with Utica First Ins. Co. during business hours on February 24 and sought to retroactively cancel his policy as of 12:01 a.m. earlier that morning. (Id., citing 2-10 Jerusalem Ave, 62 AD3d at 482.) Although the exact time of the underlying accident was "not clear," the First Department explained that "[t]here is no indication, or claim, that either the tenant or the insurer's agent was aware of the accident when they met and agreed to cancel the policy effective some hours earlier the same day." (2-10 Jerusalem Ave, 62 AD3d at 482 [emphasis added].) Based on this language, the Court interpreted the accident to have occurred sometime between 12:01 a.m., February 24, and when the tenant met with Utica's agent [*3]later that same day. (Id.) Consequently, in the Court's view, despite the alleged accident having occurred before the tenant sought to cancel the policy, the First Department held that the policy had been retroactively cancelled as of 12:01 a.m. Given this, the Court found the case supportive of KBIC's summary judgment position since, like the tenant and Utica First Ins. Co. in 2-10 Jerusalem Ave, neither Norwood nor KBIC knew of the underlying accident until after they had already cancelled the policy retroactively.
On this motion, NY Marine and Decatur argue that the Court misinterpreted 2-10 Jerusalem. They maintain that, instead of basing the effective time of cancellation—12:01 a.m., February 24—on the tenant's request to terminate the policy retroactively, the First Department was actually applying the "midnight rule" as described in Savino v Mercants Mut. Ins. Co. (44 NY2d 625, 630 [1978]). This rule provides that an insurance policy will be effectively terminated as of midnight on the day the insured provided notice of its intent to cancel. (Id. at 629-630 [holding that, upon notice to terminate a policy, the policy continues to be in effect for the remainder of the day upon which notice is given].) There are two problems with plaintiffs' theory that the First Department was applying the midnight rule. The first is that, as the Court found in its previous decision, the First Department made the preceding 12:01 a.m. February 24, the time the policy was effectively terminated—not midnight of the day Utica received notice. The second problem is that their theory contradicts the language employed by the First Department. The only mention of the midnight rule is in the context of rejecting the premises owner's arguments:
"It does not avail the owner to argue that since the policy permits cancellation only as of a 'future date' specified in a written notice, and since the written notice here did not specify a date in the future, the cancellation could not have been effective, under the 'midnight rule' explained in Savino, until the day after the accident." (Id. [internal citations omitted].)
In other words, in finding that an insurer could waive their policy against retroactive cancellation, the First Department not only gave effect to the tenant's intention to terminate the policy retroactively but specifically rejected the application of the midnight rule. Moreover, contrary to plaintiff's argument, 2-10 Jerusalem Ave did, in fact, address "the issue of the rights of a third-party affected by a retroactive cancelation": as 2-10 Jerusalem Ave was a declaratory action, the First Department necessarily adjudicated the rights of the third-party owner in holding that the insurance policy was not in effect when the accident occurred.
The Court similarly adheres to its analysis concerning Cosmopolitan Mut. Ins. Co. V Lumbermen's Mut. Casualty Co. In Lumbermen's, Riva Service Corp. acquired 1770 First Ave Corp.'s garage business. On May 28, 1958, Riva obtained a "30-day binder" from Lumbermen's Mut; sometime later, after being informed of 1770 First Ave's policy with Cosmopolitan Mut., Riva sought to change the name on the policy retroactive to June 1, 1958. (Lumbermen's, 20 NY2d at 150-151.) On June 24, 1958, Riva notified Lumbermen's Mut. of an accident that had occurred on the premises on June 19, 1958. Riva, however, did not inform Cosmopolitan Mut. Thereafter, Riva "cancelled flat" the 30-day binder with Lumbermen's Mut.—with "cancelling flat" meaning that the policy was (in effect, retroactively) considered canceled at its inception without any premiums being collected. (Id.) In the subsequent declaratory judgment action, the Court of Appeals noted that an insured and insurer are "free to agree upon the 'cancellation flat' of a binder before matured risk so long as the rights of no third party are affected." (Id. at 152.) As this Court pointed out in the June 2023 Decision, the Court of Appeals was explicit that [*4]the risk matured when Lumbermen's Mut. received notice of the underlying claim: "When Buhler notified Lumbermen's of the accident and Lumbermen's assigned an investigator to the claim the risk assumed pursuant to the binder had fully matured into a responsibility." (Id. at 152-153.) After this point, to allow Riva to "cancel flat" the Lumbermen's Mut. 30-day binder would affect Cosmopolitan Mut.'s liability to the underlying plaintiff. In contrast, in this case, the underlying plaintiff did not inform Decatur or NY Marine of his underlying claim until March 1, 2017, and Decatur and NY Marine did not inform Norwood or KBIC until March 7, 2017, four days after KBIC retroactively canceled the policy. Accordingly, because neither Norwood nor KBIC had notice of the underlying injury, the risk on the KBIC policy had not matured when Norwood canceled the policy.
Nor is the Court is persuaded by plaintiffs' argument that the risk on the KBIC policy matured upon the occurrence of Bautista-Gomez's accident. In support of their position, plaintiffs cite the Western District of New York case Mineweaser v One Beacon Ins. Co. (2018 US Dist. LEXIS 91203 [WDNY 2018]), which in turn cites Dedvukaj v Allstate Ins. Co. (175 AD2d 1, 3-4 [1st Dept 1991].) This case, however, does more to undermine their argument than advance it. In March 1985, Dedvukaj attempted to execute a flat cancellation of his policy, making it effective as of January 1, 1985. (Id.) Sometime later, the underlying plaintiff informed Dedvukaj that he had suffered an injury on January 22, 1985. Even though the injury occurred before Dedvukaj sought to cancel it but after the effective cancellation date, the First Department nonetheless rejected the argument that the flat cancellation was ineffective. It explained that the " 'flat' cancellation of the policy issued by defendant . . . was valid even after the occurrence of an insurable accident since the rights of a third party had not been adversely affected." (Id. at 1) More explicitly, Justice Murphy, who concurred in part, stated, "the [lower] court noted correctly that the Lino claim had not matured or even been reported at the time of the cancellation, and held that, as the rights of a third party were not then affected, the 'flat' cancellation was valid." (Id. at 3-4.) To the First Department in Devukaj, as in 2-10 Jerusalem Ave, the only issue affecting the validity of the retroactive cancellation was whether the insurer or insured had notice of the underlying claim such that it has matured into a responsibility in relation to other third parties. Since neither Norwood nor FBIC had the requisite notice, the Court finds the underlying claim had not matured and the parties were free to retroactively terminate the policy.
Lastly, the Court's previous decision properly relied upon 2-10 Jerusalem Ave. and Lumbermen's Mut. instead of Truax v State Farm Ins. Co. (101 Misc. 23 1031 [Sup. Ct. Onondaga County 1979]), as the latter is not binding precedent like that of the Court of Appeals and Appellate Division, First Department. Further, although the Court did not address the substance of Truax previously, the Court finds it in apposite to the issue of retroactive cancellation herein. In Truax, the court wrote, in relevant part, "Even accepting defendants' version as true [that plaintiff instructed Graceffo to cancel the policy retroactively], this court finds that State Farm did not receive notice of the cancellation until after the accident . . . No proof whatsoever has been offered that [Graceffo] was an agent 'authorized to receive and accept such notice' on the company's behalf." (Truax, 101 Misc. 23 at 1034.) In other words, the court did not opine on the validity of the retroactive cancellation itself but on the validity of notice given to State Farm. Thus, for Truax to have the persuasive weight that plaintiffs attach to it, they would have to allege that Norwood somehow did not effectuate notice on KBIC in January 2017 through March 2017. This, however, is not the basis upon which plaintiffs seek to [*5]invalidate the retroactive termination.
Accordingly, for the foregoing reasons, it is hereby
ORDERED that plaintiffs New York Marine and General Insurance Company's and 3105 Decatur Associates, LLC's motion to reargue the Court's Decision and Order dated June 30, 2023, pursuant to CPLR 2221 (d) is granted, and upon reargument, the Court adheres to its prior determination; and it is further
ORDERED that counsel for defendants shall serve a copy of this order, along with notice of entry, on all parties within ten (10) days.
This constitutes the Decision and Order of the Court
Dated: March 12, 2024
Dakota D. Ramseur, J.S.C.